## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In re: | **Jointly Administered** |
| EPIC Companies Midwest, LLC, | Bankruptcy No. 24-30281 |
| EPIC Companies Midwest 2023, LLC, | Bankruptcy No. 24-30282 |
| EPIC Employee, LLC, | Bankruptcy No. 24-30283 |
| EOLA Capital, LLC, and | Bankruptcy No. 24-30284 |
| EC West Fargo, LLC, | Bankruptcy No. 24-30285 |
| Debtors. | Chapter 11 |

| | |
|---|---|
| Lighthouse Management Group, Inc., in its capacity as Liquidating Trustee, | |
| Plaintiff, | Adv. Pro. No. ____ |
| v. | |
| Kyle Pender; Kent Busek; Michael Montgomery; KKP Properties, LLC Maverick Holdings, LLC.; Meadowlark Investments, LLC; and Montgomery & Pender, P.C., | |
| Defendants. | |

## COMPLAINT

Plaintiff Lighthouse Management Group, Inc., in its capacity as the Liquidating Trustee (the "Liquidating Trustee" or "Plaintiff") for EPIC Companies Midwest, LLC ("EPIC Midwest"), EPIC Companies Midwest 2023, LLC ("EPIC Midwest 2023"), EPIC Employee, LLC ("EPIC Employee"), EOLA Capital, LLC ("EOLA"), and EC West Fargo, LLC ("EC," and together with EPIC Midwest, EPIC Midwest 2023, Employee, and EOLA, the "Debtors"), for its Complaint against defendants Kyle Pender, Kent Busek, Michael Montgomery, Meadowlark Investments, LLC (the "Meadowlark"), KKP Properties, LLC ("KKP"), Maverick Holdings, LLC

1

("<u>Maverick</u>"), and Montgomery & Pender, P.C. ("<u>M&P</u>," and together with Mr. Pender, Mr. Busek, Mr. Montgomery, Meadowlark, KKP and Maverick, the "<u>Defendants</u>") states and alleges as follows:

## INTRODUCTION

1.      The Trustee seeks to recover numerous transfers made to the Defendants by the Indebted Epic Project Companies (as defined below) and Epic Management, LLC, who have in turn failed to repay debts owed to the Debtors, which harmed the creditors of the Debtors. In total the transfers have a value of more than $830,000.00. The Defendants extracted that value from the Indebted Epic Project Companies and Epic Management in numerous ways, including by paying themselves alleged "commissions" on investments they themselves or entities they controlled made in the project companies and as dividends on investments, despite the Indebted Epic Project Companies being unable to pay their debts as they came due and who ultimately defaulted on their obligations to the Debtors.

## PARTIES

2.      The Liquidating Trust was established upon the confirmation of the Debtors' Amended Chapter 11 Plan of Reorganization (the "<u>Plan</u>") pursuant to the *Order Granting Debtors' Motion for Substantive Consolidation and Confirming Debtors Amended Chapter 11 Plan of Liquidation Dated July 11, 2025* entered by the court on August 6, 2025. The Liquidating Trustee was appointed pursuant to the terms of the Plan and the Liquidating Trustee Agreement.

3.      Kyle Pender is an individual citizen domiciled in the State of North Dakota.

4.      Kyle Busek is an individual citizen domiciled in the State of North Dakota.

5.      Michael Montgomery is an individual citizen domiciled in the State of North Dakota.

2

6.      Meadowlark is a limited liability company organized and existing under the laws of the State of North Dakota. Its principal address is 5630 34th Avenue, Suite 120, Fargo, ND 58104. Meadowlark's registered agent is Montgomery & Pender, P.C., 5630 34th AVE S, Suite 120, Fargo, ND 58104.

7.      Kyle Pender and Kent Busek, who are both residents of the State of North Dakota, are members of Meadowlark.

8.      KKP is a limited liability company organized and existing under the laws of the State of North Dakota. Its principal address is 5630 34th Avenue, Suite 120, Fargo, ND 58104. KKP's registered agent is Montgomery & Pender, P.C., 5630 34th Avenue S, Suite 120, Fargo, ND 58104.

9.      Kyle Pender and Kent Busek, who are both residents of the State of North Dakota, are members of KKP.

10.      Maverick is a limited liability company organized and existing under the laws of the State of North Dakota. Its principal address is located at 5630 34th Avenue S, Suite 120, Fargo, ND 58104. Maverick's registered agent is Montgomery & Pender, P.C., 5630 34th Avenue S, Suite 120, Fargo, ND 58104.

11.      Kyle Pender, a resident of the State of North Dakota, is a member of Maverick.

12.      M&P is a North Dakota professional corporation. M&P's principal place of business is located at 5630 34th Avenue S, Suite 120, Fargo, ND 58104. M&P's registered agent is Bakken Commercial Services, LLC, 5630 34th Ave S, Suite 120, Fargo, ND 58104.

13.      M&P serves as the registered agent for KKP, Maverick, and Meadowlark. KKP, Maverick, and Meadowlark all list the offices of M&P as their principal address with the North Dakota Secretary of State.

**JURISDICTION AND VENUE**

14.     On July 8, 2024 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

15.     The Liquidating Trustee was vested with all Causes of Action of the Debtors pursuant to the terms of the Plan, including under Section 5.2.1 and Exhibit B of the Plan.

16.     This adversary proceeding seeks to avoid and recover fraudulent transfers or the value of such transfers pursuant to the Bankruptcy Code and the North Dakota Uniform Voidable Transactions Act (N.D. Cent. Code § 13-02.1-01, et seq.) ("NUVTA").

17.     This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b), including 28 U.S.C. § 157(b)(2)(H).

18.     Under the terms of the Plan, this court retained jurisdiction to, among other things, "[d]ecide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters and either grant or deny any applications involving the Debtors that may be pending on the Effective Date or brought thereafter."

19.     Venue is proper under 28 U.S.C. §§ 1408 and 1409.

20.     This Complaint is filed under Fed. R. Bankr. P. 7001.

21.     The Liquidating Trustee consents to the entry of final orders and judgment by this Court pursuant to Fed. R. Bankr. P. 7008.

**FACTUAL BACKGROUND**

22.     The Debtors are part of a series of affiliated companies known collectively as "EPIC Companies."

23.     "EPIC Companies" is not a party to this proceeding and no legal entity called "EPIC Companies" exists.

4

24.     The EPIC Companies consist of the Debtors, certain real estate holding entities, certain service-providing companies (i.e., property management and construction), and other companies involved in hospitality, restaurant, entertainment, and similar industries.

25.     Plaintiff had no involvement or affiliation with the Debtors or the Epic Companies until the bankruptcy cases of the Debtors began to be contemplated.

26.     More than 294 individuals and entities loaned approximately $41.8 million to the Debtors.

27.     Each Debtor was formed for the alleged purpose of providing funds to various real estate development projects throughout the State of North Dakota, each of which was developed and managed by a subsidiary of one of more of the EPIC Companies (the "Project Companies").

28.     Upon information and belief, each of the Project Companies is a "single purpose entity," meaning that each holds one real estate development project.

29.     Epic Management LLC ("Epic Management") is an Epic Companies affiliated entity, but is not a Project Company.

30.     The Epic Companies are affiliated with certain individuals who structured, organized, and invested in the Epic Companies, including Kyle Pender and Kent Busek.  These individuals also solicited and procured investments from creditors for the Debtors to invest in the Project Companies.

31.     Upon information and belief, McDowell Holdings, LLC, defendant KKP, and defendant Maverick (each, a "Pender and Busek Entity") have common ownership and were owned and controlled by one or both of Mr. Pender and Mr. Busek at the time of the Voidable Transfers (as defined below).

32.     Upon information and belief, Mr. Pender's and Mr. Montgomery's law firm, Montgomery & Pender, P.C., served as legal counsel to the Debtors and many of the Project

5

Companies. Mr. Pender, his law firm and certain entities he owned, also made numerous investments in the Project Companies.

33.     Upon information and belief, Mr. Busek owns an accounting firm that provided services to the Debtors and certain of the Project Companies.

34.     Defendant M&P is a law firm owned and operated by defendants Mr. Pender and Mr. Montgomery. Separate from M&P's investments and work for the Debtors, the Project Companies paid M&P more than $650,000.00 between January 2019 and April 2024.

35.     Although Mr. Pender, Mr. Busek, their relatives and friends, and the Pender and Busek Entities invested in and loaned money to the Project Companies in substantial amounts exceeding $5 million, those parties did not make unsecured loans to the Debtors. Accordingly, Mr. Pender, Mr. Busek, their relatives and friends, and the Pender and Busek Entities are not creditors of the Debtors that suffered the significant losses felt by those lenders.

36.     Charts of the various interactions between entities controlled by Mr. Pender and Mr. Busek, respectively, and the Project Companies and Epic Management are attached hereto as **Exhibit A and Exhibit B**.

**The Trustee's Claims Against Project Companies**

37.     The Debtors typically provided funds in the form of "subordinated debt" to each of the Project Companies (the "Sub Debt").

38.     With funds received by the Debtors from certain individual investors and lenders, the Debtors made unsecured loans to the Project Companies.

39.     Upon information and belief, the Project Companies generally had Todd Berning, Brian Kounovsky, and Steve Gehrtz serve as the governors of each Project Company entity.

**Boulevard Square III, LLC**

40.     Boulevard Square III, LLC ("Boulevard III") is one of the Project Companies.

41.     Boulevard III and Epic Midwest are parties to promissory notes dated February 1, 2021, March 1, 2021, June 27, 2022, and January 1, 2023, in the total principal amount of $1,700,000.00 (the "Boulevard Epic Midwest Notes"). One $20,000.00 principal payment was made by Boulevard III reducing the outstanding principal amount to $1,680,000.00.

42.     The records of the Debtors reflect transfers to Boulevard III consistent with the principal amount on or about the date of the Boulevard Epic Midwest Notes.

43.     Boulevard III and Epic Midwest 2023 are parties to a promissory note dated January 1, 2024, in the total principal amount of $10,000.00 (the "Boulevard Epic Midwest 2023 Note").

44.     The records of the Debtors reflect transfers to Boulevard III consistent with the principal amount on or about the date of the Boulevard Epic Midwest 2023 Note.

45.     Boulevard III and Epic Employee, LLC are parties to a promissory note dated May 1, 2024, in the total principal amount of $30,000.00 (the "Boulevard Epic Employee Note").

46.     The records of the Debtors reflect transfers to Boulevard III consistent with the principal amount on or about the date of the Boulevard Epic Employee Note.

47.     On November 1, 2024, Epic Midwest, Epic Midwest 2023, and Epic Employee filed a complaint against Boulevard III, which seeks to recover the amounts transferred to Boulevard III by Epic Midwest, Epic Midwest 2023, and Epic Employee (the "Boulevard Complaint") to commence adversary proceeding number 24-07023 currently pending before this court.

48.     The Boulevard Complaint asserts claims against Boulevard III for breach of contract, unjust enrichment, account stated, promissory estoppel, and avoidance and recovery of fraudulent transfers.

49.     All claims against Boulevard III were assigned to Plaintiff under the Plan.

50.     Plaintiff holds claims against Boulevard III in an amount of not less than $1,720,000.00.

51.     Plaintiff is a creditor of Boulevard III.

**EOLA Landholdings LLC**

52.     EOLA Landholdings LLC ("<u>EOLA Land</u>") is one of the Project Companies.

53.     EOLA Land and Epic Midwest are parties to a promissory note dated February 1, 2023, in the principal amount of $350,000.00 (the "<u>EOLA Land Epic Midwest Note</u>").

54.     EOLA Land and Epic Midwest 2023 are parties to promissory notes dated October 1, 2023, December 1, 2023, January 1, 2024, April 1, 2024, and May 1, 2024, in the total principal amount of $345,000.00 (the "<u>EOLA Land Epic Midwest 2023 Notes</u>").

55.     EOLA Land and EOLA are parties to promissory notes dated February 1, 2023, and March 1, 2024, in the total principal amount of $265,000.00 (the "<u>EOLA Land EOLA Notes</u>").

56.     EOLA Land and EC are parties to a promissory note dated July 1, 2023, in the total principal amount of $50,000.00 (the "<u>EOLA Land EC Note</u>," and together with the EOLA Land Epic Midwest Note, EOLA Land Epic Midwest 2023 Notes, EOLA Land EOLA Notes, the "<u>EOLA Land Notes</u>").

57.     The records of the Debtors reflect transfers to EOLA Land consistent with the principal amount on or about the date of the EOLA Land Notes.

58.     On March 10, 2025, Epic Midwest, Epic Midwest 2023, EOLA, and EC filed a complaint against EOLA Land, which seeks to recover the amounts transferred to EOLA Land (the "EOLA Land Complaint") to commence adversary proceeding number 25-07012 currently pending before this court.

59.     The EOLA Land Complaint asserts claims against EOLA Land for breach of contract, unjust enrichment, account stated, promissory estoppel, and avoidance and recovery of fraudulent transfers.

60.     All claims against EOLA Land were assigned to Plaintiff under the Plan.

61.     Plaintiff holds claims against EOLA Land in an amount of not less than $1,010,000.00.

62.     Plaintiff is a creditor of EOLA Land.

**EPIC Gateway East Real Estate Holdings LLC**

63.     EPIC Gateway East Real Estate Holdings LLC ("Gateway East") is one of the Project Companies.

64.     Gateway East and Epic Midwest are parties to a promissory note dated October 1, 2021, in the principal amount of $200,000.00 (the "Gateway East Epic Midwest Note"). The outstanding principal amount of this loan is $72,000.00.

65.     Gateway East and Epic Midwest 2023 are parties to promissory notes dated September 1, 2023, and December 1, 2023, in the total principal amount of $165,000.00 (the "Gateway East Epic Midwest 2023 Note").

66.     Gateway East and EOLA are parties to a promissory note dated April 1, 2024, in the principal amount of $100,000.00 (the "Gateway East EOLA Note").

67.     Gateway East and EC are parties to a promissory note dated October 1, 2021, in the principal amount of $580,000.00 with an outstanding balance of $190,000.00 (the "Gateway East EC Note," together with the Gateway East Epic Midwest Note, Gateway East Epic Midwest 2023 Note, Gateway East EOLA Note, the "Gateway East Notes").

68.     The records of the Debtors reflect transfers to Gateway East consistent with the principal amount on or about the date of the Gateway East Notes.

69.     On February 21, 2025, Epic Midwest, Epic Midwest 2023, EOLA, and EC filed a complaint against Gateway East, which seeks to recover the amounts transferred to Gateway East by those Epic entities (the "Gateway East Complaint") to commence adversary proceeding 25-07008 currently pending before this court.

70.     The Gateway East Complaint asserts claims against Gateway East for breach of contract, unjust enrichment, account stated, promissory estoppel, and avoidance and recovery of fraudulent transfers.

71.     All claims against Gateway East were assigned to Plaintiff under the Plan.

72.     Plaintiff holds claims against Gateway East in an amount of not less than $527,000.00.

73.     Plaintiff is creditor of Gateway East.

**EPIC Gateway North Real Estate Holdings LLC**

74.     EPIC Gateway North Real Estate Holdings LLC ("Gateway North") is one of the Project Companies.

75.     Gateway North and Epic Midwest are parties to a promissory note dated January 1, 2020, in the principal amount of $150,000.00 (the "Gateway North Note").

10

76.     The records of the Debtors reflect transfers to Gateway North consistent with the principal amount on or about the date of the Gateway North Note.

77.     On February 21, 2025, Epic Midwest, Epic Midwest 2023, EOLA, and EC filed a complaint against Gateway North, which seeks to recover the amounts transferred to Gateway North by those Epic entities (the "Gateway North Complaint") to commence adversary proceeding number 25-07008 currently pending before this court.

78.     The Gateway North Complaint asserts claims against Gateway North for breach of contract, unjust enrichment, account stated, and promissory estoppel.

79.     All claims against Gateway North were assigned to Plaintiff under the Plan.

80.     Plaintiff holds claims against Gateway North in an amount of not less than $150,000.00.

81.     Plaintiff is a creditor of Gateway North.

**EPIC Preference, LLC**

82.     Preference 42, LLC f/k/a EPIC Preference, LLC ("Epic Preference") is one of the Project Companies.

83.     Epic Preference and Debtor Epic Midwest are parties to promissory notes dated March 1, 2021, July 1, 2021, August 1, 2021, and September 1, 2021, in the total principal amount of $675,000.00 (the "Preference Epic Midwest Notes").

84.     Epic Preference and Debtor Epic Midwest 2023 are parties to promissory notes dated June 1, 2023, and July 1, 2023, in the total principal amount of $290,000.00 (the "Preference Epic Midwest 2023 Notes," with the Preference Epic Midwest Notes, the "Epic Preference Notes"). The current outstanding balance on the Epic Preference Notes is $865,000.00.

85. The records of the Debtors reflect transfers to Epic Preference consistent with the principal amount on or about the dates of the Epic Preference Notes.

86. On November 1, 2024, Epic Midwest and Epic Midwest 2023 filed a complaint against Epic Preference, which seeks to recover the amounts transferred to Epic Preference by Epic Midwest and Epic Midwest 2023 (the "Epic Preference Complaint") to commence adversary proceeding 24-07022 currently pending before this court.

87. The Epic Preference Complaint asserts claims against Epic Preference for breach of contract, unjust enrichment, account stated, promissory estoppel, and avoidance and recovery of fraudulent transfers.

88. All claims against Epic Preference were assigned to Plaintiff under the Plan.

89. Plaintiff holds claims against Epic Preference in an amount of not less than $865,000.

90. Plaintiff is a creditor of Epic Preference.

**Greenfield Commons II, LLC**

91. Greenfield Commons II, LLC ("Greenfield II") and Epic Midwest are parties to promissory notes dated November 1, 2020, December 1, 2020, January 1, 2021, May 1, 2021, and June 1, 2021, in the total principal amount of $1,599,500.00 (the "Greenfield II Epic Midwest Notes").

92. Greenfield II and Epic Midwest 2023 are parties to three promissory notes dated October 1, 2023, in the total principal amount of $365,000.00 (the "Greenfield II Epic Midwest 2023 Notes").

93. Greenfield II and Epic Employee are parties to a promissory note dated October 1, 2023, in the total principal amount of $50,000.00 (the "Greenfield II Epic Employee Note").

94.     Greenfield II and EOLA are parties to a promissory note dated January 1, 2023, in the total principal amount of $20,000.00 (the "Greenfield II EOLA Note," with the Greenfield II Epic Midwest Notes, Greenfield II Epic Midwest 2023 Notes, and Greenfield II Epic Employee Note, the "Greenfield II Notes").

95.     The records of the Debtors reflect transfers to Greenfield II consistent with the principal amount on or about the dates of the Greenfield II Notes.

96.     On November 1, 2024, Epic Midwest, Epic Midwest 2023, Epic Employee, and EOLA filed a complaint against Greenfield II, which seeks to recover the amounts transferred to Greenfield II by Epic Midwest and Epic Midwest 2023 (the "Greenfield II Complaint") to commence adversary proceeding 24-07025 currently pending before this court.

97.     The Greenfield II Complaint asserts claims against Greenfield II for breach of contract, unjust enrichment, account stated, promissory estoppel, and avoidance and recovery of fraudulent transfers.

98.     The Court entered default judgments against Greenfield II in favor of Epic Midwest in the sum of $1,475,413.53 plus interest, in favor of Epic Midwest 2023 in the sum of $372,202.02 plus interest, in favor of Epic Employee in the sum of $50,975.00 plus interest, and in favor of EOLA in the sum of $20,390.00 plus interest.

99.     All claims against Greenfield II were assigned to the Plaintiff under the Plan.

100.    Plaintiff holds claims against Greenfield II in an amount of not less than $1,918,980.55.

101.    Plaintiff is a creditor of Greenfield II.

**Makt, LLC**

102.    Makt, LLC ("Makt") is one of the Project Companies.

13

103.    Makt and Debtor Epic Midwest are parties to promissory notes dated March 1, 2021, April 1, 2021, and June 1, 2021, in the total principal amount of $1,403,500.00 (the "Makt Epic Midwest Notes").

104.    Makt and Debtor Epic Midwest 2023 are parties to promissory notes dated July 1, 2023, August 1, 2023, and November 1, 2023, in the total principal amount of $930,000.00 (the "Makt Epic Midwest 2023 Notes," with the Makt Epic Midwest Notes, the "Makt Notes").

105.    The records of the Debtors reflect transfers to Makt consistent with the principal amount on or about the dates of the Makt Notes.

106.    On March 1, 2025, Epic Midwest and Epic Midwest 2023 filed a complaint against Makt, which seeks to recover the amounts transferred to Makt by Epic Midwest and Epic Midwest 2023 (the "Makt Complaint") to commence adversary proceeding 25-07016 currently pending before this court.

107.    The Makt Complaint asserts claims against Makt for breach of contract, unjust enrichment, account stated, promissory estoppel, and avoidance and recovery of fraudulent transfers.

108.    Default judgment was entered against Makt and in favor of Epic Midwest and Epic Midwest 2023 on May 19, 2025, in the amounts of $1,543,052.37 plus interest and $1,024,096.74 plus interest, respectively.

109.    All claims and judgments against Makt were assigned to Plaintiff under the Plan.

110.    Plaintiff holds claims against Makt in an amount of not less than $2,567,149.11.

111.    Plaintiff is a creditor of Makt.

**SAD Downtown LLC**

112.    SAD Downtown LLC ("SAD Downtown") is one of the Project Companies.

14

113.    SAD Downtown and Epic Midwest are parties to promissory notes dated April 1, 2020, and August 1, 2020, in the total principal amount of $791,000.00, with an outstanding balance of $591,000 (the "SAD Original Notes").

114.    SAD Downtown and Epic Midwest 2023 are parties to promissory notes dated July 1, 2023, August 1, 2023, September 1, 2023, October 1, 2023, November 1, 2023, and December 1, 2023, in the total principal amount of $339,000.00 (the "SAD Epic Midwest 2023 Notes," together with the SAD Original Notes, the "SAD Notes").

115.    The records of the Debtors reflect transfers to SAD Downtown consistent with the principal amount on or about the date of the SAD Notes.

116.    On November 1, 2024, Epic Midwest and Epic Midwest 2023 filed a complaint against SAD Downtown, which seeks to recover the amounts transferred to SAD Downtown by Epic Midwest and Epic Midwest 2023 (the "SAD Downtown Complaint") to commence adversary proceeding number 24-07024 currently pending before this court.

117.    The SAD Downtown Complaint asserts claims against SAD Downtown for breach of contract, unjust enrichment, account stated, promissory estoppel, and avoidance and recovery of fraudulent transfers.

118.    All claims against SAD Downtown were assigned to Plaintiff under the Plan.

119.    Plaintiff holds claims against SAD Downtown in an amount of not less than $930,000.

120.    Plaintiff is a creditor of SAD Downtown.

**Sheyenne 32 South LLC**

121.    Sheyenne 32 South LLC (Sheyenne South") is one of the Project Companies.

122.    Sheyenne South and Epic Midwest 2023 are parties to a promissory note dated March 1, 2023, in the principal amount of $30,000.00 (the "Sheyenne South Note").

123.    The records of the Debtors reflect transfers to Sheyenne South consistent with the principal amount on or about the date of the Sheyenne South Note.

124.    On February 21, 2025, Epic Midwest 2023 and EOLA filed a complaint against Sheyenne South, which seeks to recover the amounts transferred to Sheyenne South by Epic Midwest 2023 (the "Sheyenne South Complaint") to commence adversary proceeding number 25-07007 currently pending before this court.

125.    The Sheyenne South Complaint asserts claims against Sheyenne South for breach of contract, unjust enrichment, account stated, promissory estoppel, and avoidance and recovery of fraudulent transfers.

126.    All claims against Sheyenne South were assigned to Plaintiff under the Plan.

127.    Plaintiff holds claims against Sheyenne South in an amount of not less than $30,000.00.

128.    Plaintiff is a creditor of Sheyenne South.

129.    Boulevard Square III, LLC; EPIC Gateway East Real Estate Holdings, LLC; EPIC Gateway North Real Estate Holdings, LLC; Epic Preference, LLC, EOLA Land Holdings, LLC; Makt, LLC; SAD Downtown, LLC; Sheyenne 32 West, LLC; and Sheyenne 32 South, LLC are collectively referred to hereinafter as the "Indebted Project Companies."

130.    The investors in the Indebted Project Companies included Mr. Busek; McDowell Holdings, LLC; KKP Properties, LLC; Montgomery & Pender, P.C.; Rebecca Pender; Dennis Olson; Holli Wilson; Jerry Meyers; Dan Flaten; Jeff Schneider; and Alex Salquist.

**TRANSFERS BY PROJECT COMPANIES TO MEADOWLARK**

131.    Over a period of several years, the Project Companies made numerous transfers to Meadowlark.

132.    The transfers by the Project Companies to Meadowlark include numerous transfers by the Project Companies in the four years prior to the Petition Date (the "Transfer Period") and before such period.

133.    Prior to the Transfer Period, Meadowlark received not less than $531,689.69 in transfers from the Project Companies (including from certain of the Indebted Project Companies), including the following transfers:

| Date | Amount | Project Company Transferee |
|---|---|---|
| 5/22/2019 | $65,000.00 | Greenfield Commons LLC |
| 5/22/2019 | $61,939.69 | Sheyenne 32 South LLC |
| 5/29/2019 | $15,000.00 | Sheyenne 32 North LLC |
| 5/29/2019 | $15,000.00 | Sheyenne 32 West LLC |
| 7/22/2019 | $5,000.00 | Greenfield Commons LLC |
| 7/22/2019 | $1,750.00 | Sheyenne 32 South LLC |
| 7/22/2019 | $70,750.00 | U of J MU Jamestown LLC |
| 10/1/2019 | $5,000.00 | SAD Downtown LLC |
| 2/20/2020 | $125,000.00 | EPIC Gateway LLC |
| 2/20/2020 | $63,750.00 | EPIC Gateway East LLC |
| 2/20/2020 | $63,500.00 | EPIC Gateway North LLC |
| 2/20/2020 | $40,000.00 | SAD Downtown LLC |
| **TOTAL** | **$531,689.69** | |

134.    Meadowlark received payments from the Indebted Project Companies that total not less than $161,150.00 within the Transfer Period (the "Meadowlark Project Transfers"), including the following transfers:

| Date | Amount | Project Company Transferee |
|---|---|---|
| 12/17/2020 | $14,000.00 | EPIC Gateway East Real Estate Holdings LLC |
| 12/17/2020 | $14,000.00 | EPIC Gateway East Real Estate Holdings LLC |
| 12/17/2020 | $26,150.00 | EPIC Gateway North Real Estate Holdings LLC |
| 12/17/2020 | $2,500.00 | SAD Downtown LLC |
| 12/17/2020 | $500.00 | Sheyenne 32 South LLC |
| 12/18/2020 | $43,000.00 | EOLA Landholdings LLC |
| 1/6/2021 | $25,000.00 | Boulevard Square III, LLC |
| 1/6/2021 | $25,000.00 | Boulevard Square III, LLC |
| 1/6/2021 | $50,000.00 | EPIC Gateway East Real Estate Holdings LLC |
| **TOTAL** | **$161,150.00** | |

135.    Upon information and belief, Meadowlark received transfers from the Indebted Project Companies related to investments made by certain third parties in the Indebted Project Companies.

136.    Meadowlark received transfers from the Project Companies of approximately five percent of investments that were made into a Project Company by either Mr. Busek, Mr. Pender, one of their friends or relatives, or one or more of the Pender and Busek Entities.

137.    For example, the books and records of Debtors reflect an entry for a $260,000.00 investment in EOLA Land in December 2020 by Montgomery & Pender, P.C., the law firm partially owned by Mr. Pender that was also counsel to multiple Project Companies. EOLA Land's books and records further reflect that $13,000.00 of that investment was then routed to Meadowlark.

138.    Similarly, in December 2020, the books and records of the Debtors reflect entries for a $115,000.00 investment made by Rebecca Pender in Sheyenne South, and one for Rebecca Pender – Self Directed IRA in the amount of $10,000.00. Sheyenne South's books and records further reflect that $7,600.00 was then routed to Meadowlark related to such investments.

139.    Upon information, Ms. Wilson is, or was at times during the Transfer Period, involved in a romantic relationship with Mr. Pender.

18

140.    When Ms. Wilson made a $50,000.00 investment in SAD Downtown, Meadowlark received a $5,000.00 payment from Epic Management.

141.    The Epic Companies' own internal accountant called the transfers to Meadowlark of a portion of the investments made by Mr. Pender, Mr. Busek, or one of the Pender and Busek Entities a "dirty loophole."

142.    Upon information and belief, Meadowlark provided no services or goods to the Indebted Project Companies in exchange for the Meadowlark Project Transfers it received and Indebted Project Companies had no obligation to Meadowlark to make the Meadowlark Project Transfers.

143.    Upon information and belief, Meadowlark and the Indebted Project Companies had no written agreement for Meadowlark to provide goods or services to the Indebted Project Companies.

144.    Rather, Meadowlark syphoned funds from the Indebted Project Companies related to investments made by insiders and affiliates of Meadowlark and other investors.

145.    During internal discussions regarding the payments by the Project Companies to Meadowlark, Mr. Berning directed via e-mail on January 4, 2021, that he did not want discussions related to the Meadowlark Project Payments to take place "in front of anyone else."

146.    The Meadowlark Project Transfers made to Meadowlark by the Project Companies are funds that could have been paid to one or more of the Debtors to satisfy the unpaid debts owed by the Project Companies to one or more of the Debtors, with such funds then being returned to the creditors that made unsecured loans to the Debtors.

147.    The creditors with claims against the Debtors will not be paid the full amounts owed to them by the Debtors.

148.    Upon information and belief, the Meadowlark Project Transfers were transferred to Mr. Busek or Mr. Pender, the sole members of Meadowlark, after receipt by Meadowlark from the Indebted Project Companies. Mr. Pender and Mr. Busek are subsequent transferees of the Meadowlark Project Transfers.

149.    During the time that Meadowlark received the Meadowlark Project Transfers from the Indebted Project Companies, Montgomery & Pender, P.C., Mr. Pender's law firm, also received separate payments from the Project Companies. Those transfers, upon information and belief, include payments for legal services rendered to various Epic Companies. For example, Montgomery & Pender, P.C. received payments that were expensed as "accounting & legal expenses" provided to SAD Downtown and other Project Companies.

### TRANSFERS BY PROJECT COMPANIES TO KENT BUSEK

150.    During the Transfer Period, Mr. Busek received numerous transfers from Epic Preference and Makt.

151.    The transfers by the Indebted Project Companies to Mr. Busek include numerous transfers during the Transfer Period.

152.    Mr. Busek received payments from Indebted Project Companies that total not less than $15,513.02 within the Transfer Period (the "Busek Project Transfers"), including the following:

| Date | Amount | Project Company Transferee |
|---|---|---|
| 12/31/2021 | $1,413.70 | Makt, LLC |
| 12/31/2021 | $349.32 | Epic Preference, LLC |
| 3/31/2022 | $1,500.00 | Makt, LLC |
| 3/31/2022 | $375.00 | Epic Preference, LLC |
| 6/30/2022 | $1,500.00 | Makt, LLC |
| 6/30/2022 | $375.00 | Epic Preference, LLC |
| 9/30/2022 | $1,500.00 | Makt, LLC |
| 9/30/2022 | $375.00 | Epic Preference, LLC |
| 12/31/2022 | $1,500.00 | Makt, LLC |

| 12/31/2022 | $375.00 | Epic Preference, LLC |
|---|---|---|
| 2/28/2023 | $250.00 | Epic Preference, LLC |
| 3/31/2023 | $1,500.00 | Makt, LLC |
| 6/30/2023 | $1,500.00 | Makt, LLC |
| 9/30/2023 | $1,500.00 | Makt, LLC |
| 12/31/2023 | $1,500.00 | Makt, LLC |
| **TOTAL** | **$15,513.02** | |

153.   Each of the Busek Project Transfers was recorded in the books and records of the respective Project Company as a "guaranteed payment."

154.   Upon information and belief, Mr. Busek received the Busek Project Transfers payments on account of Mr. Busek's equity investment in Epic Preference and Makt despite those Indebted Project Companies not being able to repay their loan obligations to the Debtors and others.

155.   Upon information and belief, Mr. Busek provided no services or goods to Makt or Epic Preference in exchange for the Busek Project Transfers he received.

156.   Upon information and belief, Mr. Busek and the Indebted Project Companies had no written agreement for Mr. Busek to provide goods or services to Makt or Epic Preference in exchange for the Busek Project Transfers.

### TRANSFERS BY PROJECT COMPANIES TO KKP

157.   During the Transfer Period, KKP received numerous transfers from MAK and SAD Downtown.

158.   The transfers by the Indebted Project Companies to KKP include numerous transfers during the Transfer Period.

159.   KKP received payments from the Indebted Project Companies that total not less than $13,176.37 within the Transfer Period (the "KKP Project Transfers"), including the following:

| Date | Amount | Project Company Transferee |
|---|---|---|
| 9/24/2020 | $1,500 | SAD Downtown LLC |
| 12/31/2020 | $1,500.00 | SAD Downtown LLC |
| 2/5/2021 | $500.00 | SAD Downtown LLC |
| 3/31/2021 | $125.00 | Greenfield Commons II, LLC |
| 6/30/2021 | $375.00 | Greenfield Commons II, LLC |
| 9/30/2021 | $375.00 | Greenfield Commons II, LLC |
| 12/31/2021 | $375.00 | Greenfield Commons II, LLC |
| 12/31/2021 | $706.85 | Makt, LLC |
| 3/31/2022 | 375.00 | Greenfield Commons II, LLC |
| 3/31/2022 | $750.00 | Makt, LLC |
| 6/30/2022 | $375.00 | Greenfield Commons II, LLC |
| 6/30/2022 | $750.00 | Makt, LLC |
| 9/30/2022 | $375.00 | Greenfield Commons II, LLC |
| 9/30/2022 | $750.00 | Makt, LLC |
| 12/31/2022 | $375.00 | Greenfield Commons II, LLC |
| 12/31/2022 | $750.00 | Makt, LLC |
| 2/23/2023 | 219.52 | Greenfield Commons II, LLC |
| 3/31/2023 | $750.00 | Makt, LLC |
| 6/30/2023 | $750.00 | Makt, LLC |
| 9/30/2023 | $750.00 | Makt, LLC |
| 12/31/2023 | $750.00 | Makt, LLC |
| **TOTAL** | **$13,176.37** | |

160.    Each of the KKP Project Transfers was recorded in the books and records of the respective Project Company as a "guaranteed payment."

161.    Upon information and belief, KKP received the KKP Project Transfers payments on account of KKP's equity investment in SAD Downtown and Makt despite those Indebted Project Companies not being able to repay their loan obligations to Debtors and others.

162.    Upon information and belief, KKP provided no services or goods to Makt or SAD Downtown in exchange for the KKP Project Transfers it received and neither Makt nor SAD Downtown had an obligation to KKP to make the KKP Project Transfers.

163.    Upon information and belief, KKP and the Indebted Project Companies had no written agreement for KKP to provide goods or services to Makt or SAD Downtown.

164.     Upon information and belief, the KKP Project Transfers were transferred to Mr. Busek or Mr. Pender, the members of KKP, after receipt by KKP from Makt or SAD Downtown. Mr. Pender and Mr. Busek are subsequent transferees of the KKP Project Transfers.

165.     Mr. Pender and Mr. Busek are subsequent transferees of the KKP Project Transfers.

**TRANSFERS BY PROJECT COMPANIES TO MAVERICK HOLDINGS**

166.     During the Transfer Period, Maverick received numerous transfers from EPIC Preference and Makt.

167.     The transfers by the Indebted Project Companies to Maverick include numerous transfers during the Transfer Period.

168.     Maverick received payments from the Indebted Project Companies that total not less than $8,806.17 within the Transfer Period (the "Maverick Project Transfers"), including the following:

| Date | Amount | Project Company Transferee |
|---|---|---|
| 12/31/2021 | $706.85 | Makt, LLC |
| 12/31/2021 | $349.32 | EPIC Preference, LLC |
| 3/31/2022 | $750.00 | Makt, LLC |
| 3/31/2022 | $375.00 | EPIC Preference, LLC |
| 6/30/2022 | $750.00 | Makt, LLC |
| 6/30/2022 | $375.00 | EPIC Preference, LLC |
| 9/30/2022 | $750.00 | Makt, LLC |
| 9/30/2022 | $375.00 | EPIC Preference, LLC |
| 12/31/2022 | $750.00 | Makt, LLC |
| 12/31/2022 | $375.00 | EPIC Preference, LLC |
| 2/28/2023 | $250.00 | EPIC Preference, LLC |
| 3/31/2023 | $750.00 | Makt, LLC |
| 6/30/2023 | $750.00 | Makt, LLC |
| 9/30/2023 | $750.00 | Makt, LLC |
| 12/31/2023 | $750.00 | Makt, LLC |
| 12/31/2021 | $706.85 | Makt, LLC |
| **TOTAL** | **$8,806.17** | |

169.    Each of the Maverick Project Transfers was recorded in the books and records of the respective Project Company as a "guaranteed payment."

170.    Upon information and belief, Maverick received the Maverick Project Transfers payments on account of Maverick's equity investment in the Epic Preference and Makt despite those Indebted Project Companies not being able to repay their loan obligations to Debtors and others.

171.    Kyle Pender was listed as the Investor Contact for Maverick in the Debtors' books and records.

172.    Upon information and belief, Maverick provided no services or goods to Epic Preference or Makt in exchange for the Maverick Project Transfers it received.

173.    Upon information and belief, Maverick and Epic Preference and Makt had no written agreement for Maverick to provide goods or services to Epic Preference or Makt.

174.    Upon information and belief, the Maverick Project Transfers were transferred to Mr. Pender, the owner of Maverick, after receipt by Maverick from Epic Preference and Makt.

175.    Mr. Pender and Mr. Busek are subsequent transferees of the Maverick Project Transfers.

**TRANSFERS BY PROJECT COMPANIES TO MICHAEL MONTGOMERY**

176.    During the Transfer Period, Michael Montgomery received numerous transfers from Makt.

177.    The transfers by Makt to Mr. Montgomery include numerous transfers during the Transfer Period.

178.    Mr. Montgomery received payments from Makt that total not less than $6,706.85 within the Transfer Period (the "Montgomery Project Transfers"), including the following:

24

| Date | Amount | Project Company Transferee |
|---|---|---|
| 12/31/2021 | $706.85 | Makt, LLC |
| 3/31/2022 | $750.00 | Makt, LLC |
| 6/30/2022 | $750.00 | Makt, LLC |
| 9/30/2022 | $750.00 | Makt, LLC |
| 12/31/2022 | $750.00 | Makt, LLC |
| 3/31/2023 | $750.00 | Makt, LLC |
| 6/30/2023 | $750.00 | Makt, LLC |
| 9/30/2023 | $750.00 | Makt, LLC |
| 12/31/2023 | $750.00 | Makt, LLC |
| **TOTAL** | **$6,706.85** | |

179.    Each of the Montgomery Project Transfers was recorded in the books and records of Makt as a "guaranteed payment."

180.    Upon information and belief, Mr. Montgomery received the Montgomery Project Transfers on account of his equity investment in Makt despite Makt not being able to repay its loan obligations to Debtors and others.

181.    Upon information and belief, the Montgomery Project Transfers were dividend payments.

182.    Upon information and belief, Mr. Montgomery provided no services or goods to Makt in exchange for the Montgomery Project Transfers.

**EPIC MANAGEMENT OWES UNPAID AMOUNTS TO THE DEBTORS**

183.    Epic Management is one of entities comprising the Epic Companies but is not a Project Company.

184.    Upon information and belief, Epic Management provided development and construction management services for the Project Companies during the construction of their projects and provided property management services for such Project Companies once construction was complete and the properties were operating.

185.    Epic Management and Debtor Epic Midwest 2023, LLC are parties to a promissory note dated August 1, 2023, in the principal amount of $500,000.00 (the "Management 2023 Note").

186.    The records of the Debtors reflect transfers to Epic Management by Epic Midwest 2023 consistent with the principal amount on or about the date of the Management 2023 Note.

187.    Epic Management and Debtor EOLA Capital, LLC are parties to a promissory note dated January 1, 2024, in the principal amount of $450,000.00 (the "Management 2024 Note").

188.    The records of the Debtors reflect transfers to Epic Management consistent with the principal amount on or about the date of the Management 2024 Note.

189.    On December 13, 2024, Debtors Epic Midwest 2023, LLC and EOLA Capital, LLC filed a complaint against Epic Management (the "Epic Management Complaint") to commence adversary proceeding number 24-07037 currently pending before this court ("Epic Management Adversary").

190.    The Epic Management Complaint asserts claims against Epic Management for breach of contract and unjust enrichment, among others, to recover the amounts transferred to Epic Management related to the Management 2023 Note and Management 2024 Note.

191.    On February 28, 2025, a default judgment was entered by this court in the Epic Management Adversary (i) in favor of Debtor Epic Midwest 2023, LLC against Epic Management in the amount of $544,266.64, plus interest, and (ii) in favor of EOLA Capital, LLC against Epic Management in the amount of $491,205.00, plus interest.

192.    All claims of the Debtors against Epic Management were assigned to Plaintiff under the Plan.

193.    Plaintiff holds claims against Epic Management in an amount of not less than $1,035,471.64.

194.    Plaintiff is a creditor of Epic Management.

**TRANSFERS BY EPIC MANAGEMENT LLC TO MEADOWLARK**

195.    In addition to the Meadowlark Project Transfers, beginning in May 2021, Meadowlark received transfers of not less than $25,000.00 a month from Epic Management through May 2023.

196.    The Monthly Payments by Epic Management to Meadowlark during the Transfer Period total not less than $630,000.00 (the "Monthly Payments," and together with the Meadowlark Project Transfers, the "Meadowlark Voidable Transfers"), including the following:

| Date | Amount |
|------|--------|
| 5/13/2021 | $25,000.00 |
| 6/10/2021 | $25,000.00 |
| 7/1/2021 | $25,000.00 |
| 7/27/2021 | $25,000.00 |
| 8/31/2021 | $25,000.00 |
| 9/22/2021 | $25,000.00 |
| 10/4/2021 | $25,000.00 |
| 11/29/2021 | $25,000.00 |
| 12/31/2021 | $25,000.00 |
| 1/31/2022 | $25,000.00 |
| 2/1/2022 | $25,000.00 |
| 4/1/2022 | $25,000.00 |
| 5/1/2022 | $25,000.00 |
| 6/10/2022 | $25,000.00 |
| 7/1/2022 | $25,000.00 |
| 7/29/2022 | $25,000.00 |
| 9/9/2022 | $25,000.00 |
| 10/1/2022 | $25,000.00 |
| 10/28/2022 | $25,000.00 |
| 12/1/2022 | $25,000.00 |
| 1/1/2023 | $25,000.00 |
| 2/1/2023 | $25,000.00 |
| 3/1/2023 | $25,000.00 |
| 4/4/2023 | $25,000.00 |
| 5/1/2023 | $25,000.00 |
| **Total** | **$630,000.00** |

197.    Invoices submitted by Meadowlark to Epic Management for the Monthly Payments provide no description of any services rendered or goods provided by Meadowlark to Epic Management.

198.    Upon information and belief, no written agreement exists between Epic Management and Meadowlark for Meadowlark to provide services or goods to Epic Management and Epic Management was under no obligation to Meadowlark to make the Monthly Transfers.

199.    Based on the Liquidating Trustee's review of the books and records of the Debtors, the Liquidating Trustee has located no written agreement between Epic Management and Meadowlark requiring payment of the $630,000.00 paid in Monthly Payments to Meadowlark over the course of approximately two years.

200.    Upon information and belief, neither Todd Berning, the founder of the Epic Companies, nor Amy Haas, the then Chief Executive Officer of the Epic Companies, was aware of an agreement for the Monthly Payments to be made to Meadowlark during at least a portion of the time such Monthly Payments were paid to Defendant. In fact, when Mr. Pender asked for the Monthly Payments to stop in May 2023, Ms. Haas and Mr. Berning admitted to each other that they knew nothing about such monthly payments to Meadowlark.

201.    Upon information and belief, the Monthly Transfers were transferred to Mr. Busek or Mr. Pender, the sole members of Meadowlark, after receipt by Meadowlark from the Indebted Project Companies. Mr. Pender and Mr. Busek are subsequent transferees of the Monthly Transfers.

202.    During the time that Meadowlark received the Monthly Transfers from Epic Management, Montgomery & Pender, P.C. also received payments from Epic Management in the

amount of $234,321.04, which upon information and belief includes payment for legal services rendered to various Epic Companies.

203.    The Monthly Transfers paid to Meadowlark by Epic Management are funds that could have been paid to one or more of the Debtors to satisfy the unpaid debts owed by Epic Management to one or more of the Debtors, with such funds then being returned to the creditors that made unsecured loans to the Debtors.

204.    Each of the Meadowlark Voidable Transfers was made within four years of the Petition Date.

### TRANSFERS BY EPIC MANAGEMENT TO MONTGOMERY & PENDER

205.    During the Transfer Period, M&P received numerous transfers from EPIC Management.

206.    The transfers by Epic Management to M&P include numerous transfers during the Transfer Period.

207.    M&P received payments from the Epic Management that total not less than $8,452.68 within the Transfer Period (the "M&P Transfers"), including the following:

| Date | Amount |
|------|--------|
| 11/5/2020 | $570.00 |
| 11/5/2020 | $50.00 |
| 12/31/2020 | $690.00 |
| 2/2/2021 | $180.00 |
| 8/11/2021 | $1,310.00 |
| 9/30/2021 | $1,032.39 |
| 11/4/2021 | $50.00 |
| 4/6/2022 | $1,137.50 |
| 4/6/2022 | $325.00 |
| 4/7/2022 | $25.00 |
| 11/18/2022 | $2,025.29 |
| 12/19/2022 | $30.00 |
| 12/31/2022 | $50.00 |
| 12/31/2022 | $97.50 |
| 12/31/2022 | $390.00 |

| 2/14/2023 | $490.00 |
|-----------|---------|
| **TOTAL** | **$8,452.68** |

208.    Each of the M&P Transfers was recorded in the books and records of the respective Epic Management as a "Dividends Paid – Todd Berning."

209.    M&P received the M&P Transfers, which are listed as "dividends," but Plaintiff has found no record of M&P having made an investment in Epic Management.

210.    Upon information and belief, M&P provided no services or goods to Epic Management in exchange for the M&P Transfers it received.

211.    Upon information and belief, M&P and Epic Management had no written agreement for M&P to provide goods or services to Epic Management.

212.    Upon information and belief, the M&P Transfers were transferred to Mr. Montgomery or Mr. Pender, the owners of M&P, after receipt by M&P from Epic Management.

213.    Mr. Pender and Mr. Montgomery are subsequent transferees of the M&P Transfers.

**Plaintiff's Analysis and Transfer Period**

214.    Section 108 of the Bankruptcy Code, titled "Extension of Time," provides that any statute of limitations period under nonbankruptcy law that has not expired prior to the commencement of the bankruptcy case shall not expire until later of the end of such period or two years after the Petition Date.

215.    Plaintiff has completed an analysis of all readily available information of the Debtors and is seeking to avoid all the transfers by the Indebted Project Companies to the Defendants that occurred in the four years preceding the Petition Date. During the course of this proceeding, Plaintiff may learn (through discovery or otherwise) of additional transfers made to the Defendants by the Indebted Project Companies. Plaintiff reserves its right to amend this original Complaint to include: (i) further information regarding the transfers to Defendants, (ii)

additional transfers, (iii) modifications of and/or revisions to the dates or amounts of the transfers, and (iv) additional defendants (collectively, the "Amendments") that may become known to Plaintiff at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this original Complaint.

216.    The Meadowlark Project Transfers, the Monthly Transfers, the Busek Project Transfers, the KKP Project Transfers, the Maverick Project Transfers, the Montgomery Project Transfers, and the M&P Transfers are collectively referred to herein as the "Voidable Transfers".

**COUNT I**
**Actually Fraudulent Transfers – Meadowlark Project Transfers**
**(N.D. Cent. Code § 13-02.1-04(1)(a))**

217.    Plaintiff realleges and incorporates by reference paragraphs 1-216 as if fully set forth herein.

218.    One or more of the Indebted Project Companies transferred the Meadowlark Project Transfers of not less than $161,150.00 to Meadowlark within the Transfer Period.

219.    Upon information and belief, the Meadowlark Project Transfers were ultimately made to owners of certain of the Indebted Project Companies.

220.    Meadowlark retained the benefit and control of the Meadowlark Project Transfers.

221.    There was a concerted effort by the Epic Companies and Meadowlark to conceal the Meadowlark Project Transfers.

222.    Upon information and belief, Meadowlark provided no goods or services to the Indebted Project Companies in exchange for the Meadowlark Project Transfers.

223.    Upon information and belief, the Indebted Project Companies that made the Meadowlark Transfers were insolvent or became insolvent shortly after each of the Meadowlark Project Transfers were made.

224.     The Indebted Project Companies that made the Meadowlark Transfers have been unable to pay their debts as they come due, including the debts owed to the Debtors. The Debtors are pursuing judgments for unpaid debts owed to the Debtors by at least seven of the Indebted Project Companies in adversary proceedings before this court.

225.     Upon information and belief, the Meadowlark Project Transfers were made with actual intent to hinder, delay, or defraud the Debtors and other creditors of the Indebted Project Companies that made the Meadowlark Transfers. As a result, the creditors of the Debtors, including the multitudes of individuals who invested their personal savings and retirement funds into the various Debtors, have significant unpaid claims against the Debtors.

226.     Based upon the foregoing, the Meadowlark Project Transfers constitute avoidable fraudulent transfers under applicable state law and federal law, including N.D. Cent. Code § 13-02.1-04(1)(a).

## COUNT II
### Constructively Fraudulent Transfers – Meadowlark Project Transfers
### (N.D. Cent. Code § 13-02.1-04(1)(b))

227.     Plaintiff realleges and incorporates by reference paragraphs 1-226 as if fully set forth herein.

228.     The Indebted Project Companies that made the Meadowlark Project Transfers received less than reasonably equivalent value in exchange for the Meadowlark Project Transfers.

229.     Upon information and belief, Meadowlark provided no goods or services to the Indebted Project Companies in exchange for the Meadowlark Project Transfers.

230.     Upon information and belief, the Indebted Project Companies and Meadowlark have no written agreement for Meadowlark to provide goods or services to the Project Companies.

231.    The Indebted Project Companies that made the Meadowlark Project Transfers have been unable to pay their debts as they come due, including the debts owed to the Debtors. The Debtors are pursuing judgments for unpaid debts owed to the Debtors by at least seven of the Indebted Project Companies in adversary proceedings before this court.

232.    The Liquidating Trustee has reviewed the Indebted Project Companies' general ledgers, bank statements, invoice history, and financial reports from January 2020 through July 2024, and at all relevant times of the Meadowlark Project Transfers, the Indebted Project Companies were engaged in or were about to engage in a transaction for which the remaining assets of the Indebted Project Companies were unreasonably small.

233.    Upon information and belief, the Indebted Project Companies that made the Meadowlark Project Transfers were insolvent or became insolvent shortly after each of the Meadowlark Project Transfers were made.

234.    Based upon the foregoing, the Meadowlark Project Transfers constitute avoidable fraudulent transfers pursuant to N.D. Cent. Code § 13-02.1-04(1)(b).

## COUNT III
### Recovery of Fraudulent Transfers – Meadowlark Project Transfers
### (N.D. Cent. Code §§ 13-02.1-07, 13.02-1-08(2))

235.    Plaintiff realleges and incorporates by reference paragraphs 1-234 as if fully set forth herein.

236.    Plaintiff is entitled to avoid and recover all the Meadowlark Project Transfers under NUVTA.

237.    Meadowlark was the initial transferee of each of the Meadowlark Project Transfers; or the immediate or mediate transferee of such initial transfer; or the person for whose benefit the Meadowlark Project Transfers were made.

238.    Plaintiff is entitled to recover the Meadowlark Project Transfers (or the value thereof) from Meadowlark, plus interest thereon to the date of payment and the costs of this action.

239.    Plaintiff is entitled to a judgment to recover the Meadowlark Project Transfers (or the value thereof) from any subsequent transferees of Meadowlark, including the owners of Meadowlark, Mr. Busek and Mr. Pender, plus interest thereon to the date of payment and the costs of this action.

### COUNT IV
### Actually Fraudulent Transfers – Meadowlark Monthly Transfers
### (N.D. Cent. Code § 13-02.1-04(1)(a))

240.    Plaintiff realleges and incorporates by reference paragraphs 1-239 as if fully set forth herein.

241.    Epic Management transferred the Monthly Transfers of not less than $630,000.00 to Meadowlark within the Transfer Period.

242.    Meadowlark retained the benefit and control of the Monthly Transfers.

243.    Upon information and belief, Meadowlark provided no goods or services to Epic Management in exchange for the Monthly Transfers.

244.    There was a concerted effort by Epic Management and Meadowlark to conceal the Monthly Transfers.

245.    Upon information and belief, Epic Management was insolvent or became insolvent at the time each of the Monthly Transfers was made.

246.    Epic Management has been unable to pay its debts as they come due, including the debts owed to the Debtors. The Debtors have obtained a judgment for unpaid debts owed to the Debtors by Epic Management in an adversary proceeding before this court.

247.     Upon information and belief, the Monthly Transfers were made with actual intent to hinder, delay, or defraud the Debtors and other creditors of Epic Management. As a result, the creditors of the Debtors, including the multitudes of individuals who invested their personal savings and retirement funds into the various Debtors, have significant unpaid claims against the Debtors.

248.     Based upon the foregoing, the Monthly Transfers constitute avoidable fraudulent transfers under applicable state law and federal law, including N.D. Cent. Code § 13-02.1-04(1)(a).

## COUNT V
### Constructively Fraudulent Transfers – Meadowlark Monthly Transfers
### (N.D. Cent. Code § 13-02.1-04(1)(b))

249.     Plaintiff realleges and incorporates by reference paragraphs 1-248 as if fully set forth herein.

250.     Epic Management received less than reasonably equivalent value in exchange for the Monthly Transfers.

251.     Upon information and belief, Meadowlark provided no goods or services to Epic Management in exchange for the Monthly Transfers.

252.     Upon information and belief, Epic Management and Meadowlark have no written agreement for Meadowlark to provide goods or services to Epic Management.

253.     Epic Management has been unable to pay its debts as they come due, including the debts owed to the Debtors. The Debtors have obtained a judgment for unpaid debts owed to the Debtors by Epic Management in an adversary proceeding before this court.

254.     The Liquidating Trustee has reviewed the Debtors' and Epic Management's general ledgers, bank statements, invoice history, and financial reports from January 2020 through July

35

2024, and at all relevant times of the Monthly Transfers, Epic Management was engaged in or was about to engage in a transaction for which the remaining assets of Epic Management were unreasonably small.

255.    Upon information and belief, Epic Management was insolvent or became insolvent at the time each of the Monthly Transfers was made.

256.    Based upon the foregoing, the Monthly Transfers constitute avoidable fraudulent transfers pursuant to N.D. Cent. Code § 13-02.1-04(1)(b).

## COUNT VI
### Recovery of Fraudulent Transfers – Meadowlark Monthly Transfers
### (N.D. Cent. Code §§ 13-02.1-07, 13.02-1-08(2))

257.    Plaintiff realleges and incorporates by reference paragraphs 1-256 as if fully set forth herein.

258.    Plaintiff is entitled to avoid and recover all the Monthly Transfers under NUVTA.

259.    Meadowlark was the initial transferee of each of the Monthly Transfers; or the immediate or mediate transferee of such initial transfer; or the person for whose benefit the Monthly Transfers were made.

260.    Plaintiff is entitled to a judgment to recover the Monthly Transfers (or the value thereof) from Meadowlark, plus interest thereon to the date of payment and the costs of this action.

261.    Plaintiff is entitled to a judgment to recover the Monthly Transfers (or the value thereof) from any subsequent transferees of Meadowlark, including the owners of Meadowlark, Mr. Busek and Mr. Pender, plus interest thereon to the date of payment and the costs of this action.

## COUNT VII
## Actually Fraudulent Transfers – Busek Project Transfers
## (N.D. Cent. Code § 13-02.1-04(1)(a))

262.    Plaintiff realleges and incorporates by reference paragraphs 1-261 as if fully set forth herein.

263.    One or more of the Indebted Project Companies transferred the Busek Project Transfers of not less than $15,513.02 to Mr. Busek within the Transfer Period.

264.    Mr. Busek is an investor in one or more of the Busek Project Transfers.

265.    Mr. Busek retained the benefit and control of the Busek Project Transfers.

266.    Upon information and belief, there was a concerted effort by the Epic Companies to conceal the Busek Project Transfers.

267.    Upon information and belief, Mr. Busek provided no goods or services to the Indebted Project Companies that made the Busek Project Transfers in exchange for the Busek Project Transfers.

268.    Upon information and belief, the Indebted Project Companies that made the Busek Project Transfers were insolvent or became insolvent shortly after each of the Busek Project Transfers were made.

269.    The Indebted Project Companies that made the Busek Project Transfers have been unable to pay their debts as they come due, including the debts owed to the Debtors. The Debtors are pursuing judgments for unpaid debts owed to the Debtors by at least seven of the Indebted Project Companies in adversary proceedings before this Court.

270.    Upon information and belief, the Busek Project Transfers were made with actual intent to hinder, delay, or defraud the Debtors and other creditors of the Indebted Project Companies. As a result, the creditors of the Debtors, including the multitudes of individuals who

invested their personal savings and retirement funds into the various Debtors, have significant

unpaid claims against the Debtors.

271.    Based upon the foregoing, the Busek Project Transfers constitute avoidable

fraudulent transfers under applicable state law and federal law, including N.D. Cent. Code § 13-

02.1-04(1)(a).

**COUNT VIII**
**Constructively Fraudulent Transfers – Busek Project Transfers**
**(N.D. Cent. Code § 13-02.1-04(1)(b))**

272.    Plaintiff realleges and incorporates by reference paragraphs 1-271 as if fully set

forth herein.

273.    The Indebted Project Companies that made the Busek Project Transfers received

less than reasonably equivalent value in exchange for the Busek Project Transfers.

274.    Upon information and belief, Mr. Busek provided no goods or services to the

Indebted Project Companies that made the Busek Project Transfers in exchange for the Busek

Project Transfers.

275.    Upon information and belief, the Indebted Project Companies that made the Busek

Project Transfers and Mr. Busek have no written agreement for Mr. Busek to provide goods or

services to the Indebted Project Companies that made the Busek Project Transfers in exchange for

the Busek Project Transfers.

276.    The Indebted Project Companies that made the Busek Project Transfers have been

unable to pay their debts as they come due, including the debts owed to the Debtors. The Debtors

are pursuing judgments for unpaid debts owed to the Debtors by seven of the Indebted Project

Companies in adversary proceedings before this Court.

277.    The Liquidating Trustee has reviewed the Indebted Project Companies' general ledgers, bank statements, invoice history, and financial reports from January 2020 through July 2024, and at all relevant times of the Busek Project Transfers, the Indebted Project Companies that made the Busek Project Transfers were engaged in or were about to engage in a transaction for which the remaining assets of the Indebted Project Companies were unreasonably small.

278.    Upon information and belief, the Indebted Project Companies that made the Busek Project Transfers were insolvent or became insolvent shortly after each of the Busek Project Transfers were made.

279.    Based upon the foregoing, the Busek Project Transfers constitute avoidable fraudulent transfers pursuant to N.D. Cent. Code § 13-02.1-04(1)(b).

## COUNT IX
### Recovery of Fraudulent Transfers – Busek Project Transfers
### (N.D. Cent. Code §§ 13-02.1-07, 13.02-1-08(2))

280.    Plaintiff realleges and incorporates by reference paragraphs 1-279 as if fully set forth herein.

281.    Plaintiff is entitled to avoid and recover all the Busek Project Transfers under NUVTA.

282.    Mr. Busek was the initial transferee of each of the Busek Project Transfers; or the immediate or mediate transferee of such initial transfer; or the person for whose benefit the Busek Project Transfers were made.

283.    Plaintiff is entitled to recover the Busek Project Transfers (or the value thereof) from Busek, plus interest thereon to the date of payment and the costs of this action.

284.    Plaintiff is entitled to a judgment to recover the Busek Project Transfers (or the value thereof) from any subsequent transferees of Mr. Busek, plus interest thereon to the date of payment and the costs of this action.

## COUNT X
### Actually Fraudulent Transfers – KKP Project Transfers
### (N.D. Cent. Code § 13-02.1-04(1)(a))

285.    Plaintiff realleges and incorporates by reference paragraphs 1-284 as if fully set forth herein.

286.    One or more of the Indebted Project Companies transferred the KKP Project Transfers of not less than $10,206.85 to KKP within the Transfer Period.

287.    Upon information and belief, the KKP Project Transfers were made to owners of certain of the Indebted Project Companies.

288.    KKP retained the benefit and control of the KKP Project Transfers.

289.    Upon information and belief, there was a concerted effort by the Epic Companies and KKP to conceal the KKP Project Transfers.

290.    Upon information and belief, KKP provided no goods or services to the Indebted Project Companies in exchange for the KKP Project Transfers.

291.    Upon information and belief, the Indebted Project Companies that made the KKP Transfers were insolvent or became insolvent shortly after each of the KKP Project Transfers were made.

292.    The Indebted Project Companies that made the KKP Transfers have been unable to pay their debts as they come due, including the debts owed to the Debtors. The Debtors are pursuing judgments for unpaid debts owed to the Debtors by at least seven of the Indebted Project Companies in adversary proceedings before this court.

293.    Upon information and belief, the KKP Project Transfers were made with actual intent to hinder, delay, or defraud the Debtors and other creditors of the Indebted Project Companies that made the KKP Project Transfers. As a result, the creditors of the Debtors, including the multitudes of individuals who invested their personal savings and retirement funds into the various Debtors, have significant unpaid claims against the Debtors.

294.    Based upon the foregoing, the KKP Project Transfers constitute avoidable fraudulent transfers under applicable state law and federal law, including N.D. Cent. Code § 13-02.1-04(1)(a).

## COUNT XI
### Constructively Fraudulent Transfers – KKP Project Transfers
### (N.D. Cent. Code § 13-02.1-04(1)(b))

295.    Plaintiff realleges and incorporates by reference paragraphs 1-294 as if fully set forth herein.

296.    The Indebted Project Companies that made the KKP Project Transfers received less than reasonably equivalent value in exchange for the KKP Project Transfers.

297.    Upon information and belief, KKP provided no goods or services to the Indebted Project Companies in exchange for the KKP Project Transfers.

298.    Upon information and belief, the Indebted Project Companies and KKP have no written agreement for KKP to provide goods or services to the Project Companies.

299.    The Indebted Project Companies that made the KKP Project Transfers have been unable to pay their debts as they come due, including the debts owed to the Debtors. The Debtors are pursuing judgments for unpaid debts owed to the Debtors by at least seven of the Indebted Project Companies in adversary proceedings before this Court.

300.    The Liquidating Trustee has reviewed the Indebted Project Companies' general ledgers, bank statements, invoice history, and financial reports from January 2020 through July 2024, and at all relevant times of the KKP Project Transfers, the Indebted Project Companies were engaged in or were about to engage in a transaction for which the remaining assets of the Indebted Project Companies were unreasonably small.

301.    Upon information and belief, the Indebted Project Companies that made the KKP Project Transfers were insolvent or became insolvent shortly after each of the KKP Project Transfers were made.

302.    Based upon the foregoing, the KKP Project Transfers constitute avoidable fraudulent transfers pursuant to N.D. Cent. Code § 13-02.1-04(1)(b).

### COUNT XII
### Recovery of Fraudulent Transfers – KKP Project Transfers
### (N.D. Cent. Code §§ 13-02.1-07, 13.02-1-08(2))

303.    Plaintiff realleges and incorporates by reference paragraphs 1-302 as if fully set forth herein.

304.    Plaintiff is entitled to avoid and recover all the KKP Project Transfers under NUVTA.

305.    KKP was the initial transferee of each of the KKP Project Transfers; or the immediate or mediate transferee of such initial transfer; or the person for whose benefit the KKP Project Transfers were made.

306.    Plaintiff is entitled to recover the KKP Project Transfers (or the value thereof) from KKP, plus interest thereon to the date of payment and the costs of this action.

307.     Plaintiff is entitled to a judgment to recover the KKP Project Transfers (or the value thereof) from any subsequent transferees of KKP, including the owners of KKP, Mr. Busek and Mr. Pender, plus interest thereon to the date of payment and the costs of this action.

### COUNT XIII
### Actually Fraudulent Transfers – Maverick Project Transfers
### (N.D. Cent. Code § 13-02.1-04(1)(a))

308.     Plaintiff realleges and incorporates by reference paragraphs 1-307 as if fully set forth herein.

309.     One or more of the Indebted Project Companies transferred the Maverick Project Transfers of not less than $8,806.17 to Maverick within the Transfer Period.

310.     Upon information and belief, the Maverick Project Transfers were made to owners of certain of the Indebted Project Companies.

311.     Maverick retained the benefit and control of the Maverick Project Transfers.

312.     Upon information and belief, there was a concerted effort by the Epic Companies and Maverick to conceal the Maverick Project Transfers.

313.     Upon information and belief, Maverick provided no goods or services to the Indebted Project Companies in exchange for the Maverick Project Transfers.

314.     Upon information and belief, the Indebted Project Companies that made the Maverick Transfers were insolvent or became insolvent shortly after each of the Maverick Project Transfers were made.

315.     The Indebted Project Companies that made the Maverick Transfers have been unable to pay their debts as they come due, including the debts owed to the Debtors. The Debtors are pursuing judgments for unpaid debts owed to the Debtors by at least seven of the Indebted Project Companies in adversary proceedings before this Court.

43

316.    Upon information and belief, the Maverick Project Transfers were made with actual intent to hinder, delay, or defraud the Debtors and other creditors of the Indebted Project Companies that made the Maverick Project Transfers. As a result, the creditors of the Debtors, including the multitudes of individuals who invested their personal savings and retirement funds into the various Debtors, have significant unpaid claims against the Debtors.

317.    Based upon the foregoing, the Maverick Project Transfers constitute avoidable fraudulent transfers under applicable state law and federal law, including N.D. Cent. Code § 13-02.1-04(1)(a).

## COUNT XIV
### Constructively Fraudulent Transfers – Maverick Project Transfers
### (N.D. Cent. Code § 13-02.1-04(1)(b))

318.    Plaintiff realleges and incorporates by reference paragraphs 1-317 as if fully set forth herein.

319.    The Indebted Project Companies that made the Maverick Project Transfers received less than reasonably equivalent value in exchange for the Maverick Project Transfers.

320.    Upon information and belief, Maverick provided no goods or services to the Indebted Project Companies in exchange for the Maverick Project Transfers.

321.    Upon information and belief, the Indebted Project Companies and Maverick have no written agreement for Maverick to provide goods or services to the Project Companies.

322.    The Indebted Project Companies that made the Maverick Project Transfers have been unable to pay their debts as they come due, including the debts owed to the Debtors. The Debtors are pursuing judgments for unpaid debts owed to the Debtors by seven of the Indebted Project Companies in adversary proceedings before this Court.

323.    The Liquidating Trustee has reviewed the Indebted Project Companies' general ledgers, bank statements, invoice history, and financial reports from January 2020 through July 2024, and at all relevant times of the Maverick Project Transfers, the Indebted Project Companies were engaged in or were about to engage in a transaction for which the remaining assets of the Indebted Project Companies were unreasonably small.

324.    Upon information and belief, the Indebted Project Companies that made the Maverick Project Transfers were insolvent or became insolvent shortly after each of the Maverick Project Transfers were made.

325.    Based upon the foregoing, the Maverick Project Transfers constitute avoidable fraudulent transfers pursuant to N.D. Cent. Code § 13-02.1-04(1)(b).

## COUNT XV
### Recovery of Fraudulent Transfers – Maverick Project Transfers
### (N.D. Cent. Code §§ 13-02.1-07, 13.02-1-08(2))

326.    Plaintiff realleges and incorporates by reference paragraphs 1-325 as if fully set forth herein.

327.    Plaintiff is entitled to avoid and recover all the Maverick Project Transfers under NUVTA.

328.    Maverick was the initial transferee of each of the Maverick Project Transfers; or the immediate or mediate transferee of such initial transfer; or the person for whose benefit the Maverick Project Transfers were made.

329.    Plaintiff is entitled to recover the Maverick Project Transfers (or the value thereof) from Maverick, plus interest thereon to the date of payment and the costs of this action.

330.     Plaintiff is entitled to a judgment to recover the Maverick Project Transfers (or the value thereof) from any subsequent transferees of Maverick, including the owners of Maverick, which includes Mr. Pender, plus interest thereon to the date of payment and the costs of this action.

**COUNT XVI**
**Actually Fraudulent Transfers – Montgomery Project Transfers**
**(N.D. Cent. Code § 13-02.1-04(1)(a))**

331.     Plaintiff realleges and incorporates by reference paragraphs 1-330 as if fully set forth herein.

332.     One or more of the Indebted Project Companies transferred the Montgomery Project Transfers of not less than $6,706.85 to Mr. Montgomery within the Transfer Period.

333.     Mr. Montgomery is an investor in one or more of the Montgomery Project Transfers.

334.     Mr. Montgomery retained the benefit and control of the Montgomery Project Transfers.

335.     Upon information and belief, there was a concerted effort by the Epic Companies to conceal the Montgomery Project Transfers.

336.     Upon information and belief, Mr. Montgomery provided no goods or services to the Indebted Project Companies that made the Montgomery Project Transfers in exchange for the Montgomery Project Transfers.

337.     Upon information and belief, the Indebted Project Companies that made the Montgomery Project Transfers were insolvent or became insolvent shortly after each of the Montgomery Project Transfers were made.

338.     The Indebted Project Companies that made the Montgomery Project Transfers have been unable to pay their debts as they come due, including the debts owed to the Debtors. The

Debtors are pursuing judgments for unpaid debts owed to the Debtors by at least seven of the Indebted Project Companies in adversary proceedings before this Court.

339.     Upon information and belief, the Montgomery Project Transfers were made with actual intent to hinder, delay, or defraud the Debtors and other creditors of the Indebted Project Companies. As a result, the creditors of the Debtors, including the multitudes of individuals who invested their personal savings and retirement funds into the various Debtors, have significant unpaid claims against the Debtors.

340.     Based upon the foregoing, the Montgomery Project Transfers constitute avoidable fraudulent transfers under applicable state law and federal law, including N.D. Cent. Code § 13-02.1-04(1)(a).

## COUNT XVII
### Constructively Fraudulent Transfers – Montgomery Project Transfers
### (N.D. Cent. Code § 13-02.1-04(1)(b))

341.     Plaintiff realleges and incorporates by reference paragraphs 1-340 as if fully set forth herein.

342.     The Indebted Project Companies that made the Montgomery Project Transfers received less than reasonably equivalent value in exchange for the Montgomery Project Transfers.

343.     Upon information and belief, Mr. Montgomery provided no goods or services to the Indebted Project Companies that made the Montgomery Project Transfers in exchange for the Montgomery Project Transfers.

344.     Upon information and belief, the Indebted Project Companies that made the Montgomery Project Transfers and Mr. Montgomery have no written agreement for Mr. Montgomery to provide goods or services to the Indebted Project Companies in exchange for the Montgomery Project Transfers.

345.     The Indebted Project Companies that made the Montgomery Project Transfers have been unable to pay their debts as they come due, including the debts owed to the Debtors. The Debtors are pursuing judgments for unpaid debts owed to the Debtors by seven of the Indebted Project Companies in adversary proceedings before this Court.

346.     The Liquidating Trustee has reviewed the Indebted Project Companies' general ledgers, bank statements, invoice history, and financial reports from January 2020 through July 2024, and at all relevant times of the Montgomery Project Transfers, the Indebted Project Companies were engaged in or were about to engage in a transaction for which the remaining assets of the Indebted Project Companies were unreasonably small.

347.     Upon information and belief, the Indebted Project Companies that made the Montgomery Project Transfers were insolvent or became insolvent shortly after each of the Montgomery Project Transfers were made.

348.     Based upon the foregoing, the Montgomery Project Transfers constitute avoidable fraudulent transfers pursuant to N.D. Cent. Code § 13-02.1-04(1)(b).

## COUNT XVIII
### Recovery of Fraudulent Transfers – Montgomery Project Transfers
### (N.D. Cent. Code §§ 13-02.1-07, 13.02-1-08(2))

349.     Plaintiff realleges and incorporates by reference paragraphs 1-348 as if fully set forth herein.

350.     Plaintiff is entitled to avoid and recover all the Montgomery Project Transfers under NUVTA.

351.     Mr. Montgomery was the initial transferee of each of the Montgomery Project Transfers; or the immediate or mediate transferee of such initial transfer; or the person for whose benefit the Montgomery Project Transfers were made.

352.    Plaintiff is entitled to recover the Montgomery Project Transfers (or the value thereof) from Montgomery, plus interest thereon to the date of payment and the costs of this action.

353.    Plaintiff is entitled to a judgment to recover the Montgomery Project Transfers (or the value thereof) from any subsequent transferees of Mr. Montgomery, plus interest thereon to the date of payment and the costs of this action.

**COUNT XIX**
**Actually Fraudulent Transfers – M&P Transfers**
**(N.D. Cent. Code § 13-02.1-04(1)(a))**

354.    Plaintiff realleges and incorporates by reference paragraphs 1-353 as if fully set forth herein.

355.    Epic Management transferred the M&P Transfers of not less than $8,452.68 to M&P within the Transfer Period.

356.    M&P retained the benefit and control of the M&P Transfers.

357.    Upon information and belief, M&P provided no goods or services to Epic Management in exchange for the M&P Transfers.

358.    Upon information and belief, there was a concerted effort by Epic Management to conceal the M&P Transfers.

359.    Upon information and belief, Epic Management was insolvent or became insolvent at the time each of the M&P was made.

360.    Epic Management has been unable to pay its debts as they come due, including the debts owed to the Debtors. The Debtors have obtained a judgment for unpaid debts owed to the Debtors by Epic Management in an adversary proceeding before this Court.

361.    Upon information and belief, the M&P Transfers were made with actual intent to hinder, delay, or defraud the Debtors and other creditors of Epic Management. As a result, the creditors of the Debtors, including the multitudes of individuals who invested their personal savings and retirement funds into the various Debtors, have significant unpaid claims against the Debtors.

362.    Based upon the foregoing, the M&P Transfers constitute avoidable fraudulent transfers under applicable state law and federal law, including N.D. Cent. Code § 13-02.1-04(1)(a).

## COUNT XX
### Constructively Fraudulent Transfers – M&P Transfers
### (N.D. Cent. Code § 13-02.1-04(1)(b))

363.    Plaintiff realleges and incorporates by reference paragraphs 1–362 as if fully set forth herein.

364.    Epic Management received less than reasonably equivalent value in exchange for the M&P Transfers.

365.    Upon information and belief, M&P provided no goods or services to Epic Management in exchange for the M&P Transfers.

366.    Upon information and belief, Epic Management and M&P had no written agreement for M&P to provide goods or services to Epic Management in exchange for the M&P Transfers.

367.    Epic Management has been unable to pay its debts as they come due, including the debts owed to the Debtors. The Debtors have obtained a judgment for unpaid debts owed to the Debtors by Epic Management in an adversary proceeding before this Court.

368.    The Liquidating Trustee has reviewed the Debtors' and Epic Management's general ledgers, bank statements, invoice history, and financial reports from January 2020 through July 2024, and at all relevant times of the M&P Transfers, Epic Management was engaged in or was about to engage in a transaction for which the remaining assets of Epic Management were unreasonably small.

369.    Upon information and belief, Epic Management was insolvent or became insolvent at the time each of the M&P Transfers was made.

370.    Based upon the foregoing, the M&P Transfers constitute avoidable fraudulent transfers pursuant to N.D. Cent. Code § 13-02.1-04(1)(b).

### COUNT XXI
### Recovery of Fraudulent Transfers – M&P Monthly Transfers
### (N.D. Cent. Code §§ 13-02.1-07, 13.02-1-08(2))

371.    Plaintiff realleges and incorporates by reference paragraphs 1-370 as if fully set forth herein.

372.    Plaintiff is entitled to avoid and recover all the M&P Transfers under NUVTA.

373.    M&P was the initial transferee of each of the M&P Transfers; or the immediate or mediate transferee of such initial transfer; or the person for whose benefit the M&P Transfers were made.

374.    Plaintiff is entitled to a judgment to recover the M&P Transfers (or the value thereof) from Meadowlark, plus interest thereon to the date of payment and the costs of this action.

375.    Plaintiff is entitled to a judgment to recover the M&P Transfers (or the value thereof) from any subsequent transferees of M&P, including the owners of M&P, Mr. Montgomery and Mr. Pender, plus interest thereon to the date of payment and the costs of this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter a judgment against the Defendants:

A.      Avoiding the Voidable Transfers pursuant to applicable state and federal laws, including NUVTA;

B.      Determining that Plaintiff is entitled to recover the Voidable Transfers or the value thereof from the respective Defendants or any immediate or mediate transferee, plus interest and costs;

C.      Determining that Plaintiff is entitled to recover the Voidable Transfers or the value thereof from any subsequent transferee of the Defendants, including but not limited to Mr. Pender or Mr. Busek, plus interest and costs;

D.      Attaching or proving such other provisional remedy against the Voidable Transfers or other property of the Defendants in an amount equal to the judgment entered in favor of Plaintiff;

E.      Awarding Plaintiff his attorneys' fees and costs for pursuing this action against Defendants as allowed by applicable law; and

F.      Granting such other and further relief as the Court deems just and proper.

Dated: December 23, 2025

*/s/ Christopher J. Harayda*
Benjamin J. Court (ND #07776)
Christopher J. Harayda (MN #0390333)
**STINSON LLP**
50 South Sixth Street, Suite 2600
Minneapolis, Minnesota 55402
Telephone: 612-335-1500
benjamin.court@stinson.com
cj.harayda@stinson.com

*Counsel for Lighthouse Management Group,*
*Inc., in its capacity as the Liquidating Trustee*

## EXHIBIT A

**<u>EXHIBIT B</u>**