**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NORTH DAKOTA**

| | |
|---|---|
| In re: | Jointly Administered |
| EPIC Companies Midwest, LLC,<br>EPIC Companies Midwest 2023, LLC,<br>EPIC Employee, LLC,<br>EOLA Capital, LLC, and<br>EC West Fargo, LLC, | Bk. Case No. 24-30281<br>Bk. Case No. 24-30282<br>Bk. Case No. 24-30283<br>Bk. Case No. 24-30284<br>Bk. Case No. 24-30285 |
| Debtors. | Chapter 11 |

| | |
|---|---|
| Lighthouse Management Group, Inc., in its capacity as Liquidating Trustee,<br><br>Plaintiff, | |
| v. | Adv. Proc. No. 25-07036 |
| Kyle Pender; Kent Busek; Michael Montgomery; KKP Properties, LLC; Maverick Holdings, LLC; Meadowlark Investments, LLC; and Montgomery & Pender, P.C.,<br><br>Defendants. | |

**ORDER DENYING MOTION TO DISMISS**

On June 11, 2026, this adversary proceeding came before the Court for oral arguments on the Defendants' Motion to Dismiss Adversary Proceeding. Dkt. No. 26. The Plaintiff filed an Opposition and a Notice of Request for Judicial Notice. Dkt. Nos. 27 and 28. The Defendants filed a Reply. Dkt. No. 28. The Court took the matter under advisement.

The Court has considered the parties' briefs and arguments. For the reasons the Court shall state, the Court denies the Defendants' motion to dismiss.

## FACTUAL AND PROCEDURAL BACKGROUND

The EPIC Companies are affiliated entities that engaged in real estate development throughout North Dakota. On July 8, 2024, several of the EPIC Companies ("the Debtors") filed petitions under chapter 11, these cases were jointly administered and substantively consolidated. On August 6, 2025, the Debtors' Amended Chapter 11 Plan of Liquidation ("the Plan") was confirmed.

The Debtors formed separate entities—so-called "Project Companies"—for each property or parcel of land being developed. The Project Companies were financed via loans from the Debtors. After entering chapter 11, the Debtors filed adversary proceedings against several Project Companies based on those entities' alleged failure to repay those loans.

Four Project Companies and an additional entity, EPIC Management, LLC, relate to this adversary proceeding. Various Debtors obtained default judgments against EOLA Landholdings, LLC ("Landholdings"); Makt, LLC ("Makt"); and EPIC Management, LLC ("Management"), respectively, in Adversary Proceedings Nos. 25-07012, 25-07016, and 24-07037. The Debtors currently have Adversary Proceedings Nos. 25-07007 and 25-07008 respectively pending against EPIC Sheyenne 32 South LLC ("Sheyenne") and Gateway East Real Estate Holdings LLC ("Gateway"). For ease of reference, the Court will refer to these five entities collectively as "the Project Companies." The Plaintiff, who is the Liquidating Trustee appointed under the Plan for the benefit of creditors, contends that the Debtors' rights regarding all these causes of actions and proceedings were transferred to the Plaintiff under the Plan.

The Plaintiff alleges that the seven Defendants in this adversary proceeding each were initial or subsequent transferees of fraudulent transfers made by one or more Project Companies. The Plaintiff alleges that Defendants Kent Busek ("Busek"); Michael Montgomery

("Montgomery"); KKP Properties, LLC ("KKP"); and Maverick Holdings, LLC ("Maverick") received fraudulent transfers from Makt. The Plaintiff alleges that Defendants Meadowlark Investments, LLC ("Meadowlark") and Montgomery & Pender, P.C. ("M&P") received fraudulent transfers from Management. The Plaintiff alleges that Meadowlark also received fraudulent transfers from Landholdings, Gateway, and Sheyenne. The Plaintiff alleges that Defendants Busek and Kyle Pender ("Pender") were subsequent transferees of fraudulent transfers made to Meadowlark. The Plaintiff also alleges that Pender and Montgomery were subsequent transferees of fraudulent transfers made to M&P.

The Plaintiff filed the original complaint in this adversary proceeding on December 23, 2025. The Defendants filed a motion to dismiss on January 22, 2026, and the Court heard oral arguments on March 16, 2026. At the hearing, the parties agreed that the Plaintiff would file an amended complaint, which the Plaintiff filed on April 6, 2026. The Defendants filed this motion to dismiss the amended complaint on April 27, 2026, and the Court heard oral arguments on June 11, 2026.

The Amended Complaint asserts four counts against each Defendant. First, the Plaintiff asserts claims for actual fraudulent transfers under the North Dakota Uniform Voidable Transactions Act ("NUVTA"), which are transfers made with actual intent to hinder, delay, or defraud creditors. See N.D. CENT. CODE § 13-02.1-04(1)(a). Second, the Plaintiff asserts claims for constructive fraudulent transfers under NUVTA, which are transfers made for less than reasonably equivalent value and while one or more of three conditions indicating financial distress existed: insolvency, inadequate capital, or an inability to pay debts as they became due. See N.D. CENT. CODE § 13-02.1-04(1)(b). Third, the Plaintiff asserts that each Defendant was the initial, immediate, or mediate transferee of fraudulent transfers and, therefore, the Plaintiff may recover

from the Defendants. See N.D. Cent. Code 13-02.1-07. Fourth, the Plaintiff asserts claims for recovery of the allegedly fraudulent transfers in aid of enforcement of the default judgments against Landholdings, Makt, and Management. See N.D. CENT. CODE § 13-02.1-08(2); Fed. R. Civ. P. 69; Fed. R. Bankr. P. 7069.

The Defendants argue this adversary proceeding should be dismissed for seven reasons. First, the Court has no postconfirmation jurisdiction over these claims. Defs.' Mot., Dkt. No. 26 at 6–8, 14–15. Second, the Plaintiff has no standing to bring these claims. Id. at 10–11, 14–18. Third, mandatory abstention applies under 11 U.S.C. § 1334(c)(2). Id. at 26–27. Fourth, permissive abstention is warranted under 11 U.S.C. § 1334(c)(1). Id. at 27. Fifth, the statute of limitations has run on some claims because 11 U.S.C. § 108 does not apply. Id. at 24–25. Sixth, the Plaintiff fails to plead the elements of a fraudulent transfer and fails to plead fraud with particularity. Id. at 16–17, 21–23. Seventh, these claims are barred by in pari delicto. Id. at 19–21. The Defendants also argue that the reference should be withdrawn and leave to amend should be denied. Id. at 23, 25.

## LEGAL STANDARD

Federal Rule of Bankruptcy Procedure 7012 incorporates Federal Rule of Civil Procedure 12 into adversary proceedings. Therefore, when considering a motion to dismiss for failure to state a claim, a court must determine whether the complaint alleges facts sufficient to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see FED. R. CIV. P. 12(b)(6). A court must accept "all the allegations in the complaint [as] true (even if doubtful in fact)" to determine the plausibility of the claims. Id. at 555. A court may, however, ignore "[t]hreadbare recitals of the elements of a cause of action" or legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

A plaintiff must also "state with particularity the circumstances constituting fraud" when alleging fraudulent transfers. Fed. R. Civ. P. 9(b); Stoebner v. Opportunity Fin., LLC, 909 F.3d 219, 226, 226 n.6 (8th Cir. 2018) (citing Residential Funding Co. v. Bell State Bank & Trust, 637 Fed. Appx. 970, 971 (8th Cir. 2016)). This requires the plaintiff to allege "the who, what, when, where and how" of the fraudulent transfer. Freitas v. Wells Fargo Home Mortg., Inc., 703 F.3d 436, 439 (8th Cir. 2016); Drobnak v. Andersen Corp., 561 F.3d 778, 783 (8th Cir. 2009). The extent of this particularity must be read "in harmony with the principles of notice pleading" and provide sufficient notice for a defense against alleged conduct involving moral turpitude. Abels v. Farmers Commodities Corp., 259 F.3d 910, 920 (8th Cir. 2001).

When determining a lack of subject-matter jurisdiction under Rule 12(b)(1), a court "must distinguish between a 'facial attack' and a 'factual attack.'" Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990). A facial attack restricts itself to the pleadings, so a court must accept all allegations in the complaint as true, as it would under Rule 12(b)(6). Id. A factual attack includes information on the record outside of the pleadings, so a court need not hold the allegations in the complaint as true. Id. (The Defendants here make a facial attack, so the Court accepts as true all allegations in the Amended Complaint.)

## DISCUSSION

The Defendants' arguments fail. The Court has jurisdiction over the claims in this adversary proceeding under applicable Eighth Circuit law. The Plaintiff has standing because the Plan retained these claims and the claims do not belong to the alleged fraudulent transferors. Mandatory abstention does not apply because no state court action has been commenced, as required for mandatory abstention, and there likely would be diversity jurisdiction. Permissive abstention does not apply because most of the relevant factors weigh against abstention. The claims

that arose on or after July 8, 2020 are not barred by the statute of limitations because the Plaintiff may invoke Section 108(a) of the Bankruptcy Code, which extends the statute of limitations. The Plaintiff adequately alleges the elements of fraudulent transfer claims and satisfies FED. R. CIV. P. 9(b)'s particularity requirement. The Court will not apply in pari delicto at this stage as it is premature. Withdrawal of the reference is not before the Court because such relief requires a motion to be heard by the District Court. Lastly, the Court need not decide whether to grant leave to amend because the motion to dismiss is denied.

**I. The Court Has Postconfirmation Jurisdiction Over These Claims.**

28 U.S.C. § 1334(b) provides for bankruptcy jurisdiction over "all civil proceedings arising under title 11 or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). This proceeding does not arise under title 11 or in a case under title 11. Therefore, the Court only has jurisdiction if this proceeding is "related to" a case under title 11. The close nexus and conceivable effect tests emerged to define the scope of "related to" jurisdiction under 28 U.S.C. § 1334(b). See In re Diocese of Winona-Rochester, Adv. Proc. No. 18-03094, 2022 WL 1814040, at *6–7 (Bankr. D. Minn. May 9, 2022) (collecting cases), R. & R. adopted sub nom. DW Harrow & Assoc., LLC v. United States Fire Insurance Co., File No. 22-cv-1259 (ECT), 2022 WL 1810607 (D. Minn. June 2, 2022). The Eighth Circuit has used both tests to determine post-confirmation "related to" jurisdiction. Id. Therefore, the Court will apply both tests to this adversary proceeding.

The Defendants argue that postconfirmation jurisdiction is absent because the Plan did not adequately retain these claims and no close nexus exists between these claims and the bankruptcy process as required by Eighth Circuit precedent. Defs.' Mot., Dkt. No. 26 at 8. The Defendants claim that this lack of a close nexus precludes jurisdiction because a plan by itself cannot confer jurisdiction. Id. at 14–15. The Defendants further argue that the bankruptcy estate no longer exists

and these claims constitute independent litigation that is insufficiently related to plan administration. Id. at 15. The Defendants do not argue that the adversary proceeding fails the conceivable effect test that is also used by the Eighth Circuit.

The Plaintiff responds that this adversary proceeding attempts to enforce judgments and retained claims that would directly impact distributions to creditors under the Plan. Pl.'s Opp'n, Dkt. No. 27 at 22–23. The Plaintiff argues that both the close nexus and conceivable effect tests used by the Eighth Circuit are met. Id. at 23. First, the Plaintiff contends that a close nexus exists between this adversary proceeding and the bankruptcy process because the state law claims are retained by the Plan and any recovery would be distributed to creditors. Id. at 25–26. Second, the Plaintiff contends that this adversary proceeding has a conceivable effect on the administration of the bankruptcy process by affecting the rights and liabilities of the Debtors. Id. at 26. The Plaintiff argues the conceivable effect test is met because the Plan retains these claims, retains jurisdiction, and entitles creditors to any potential net recovery. Id. at 26–27.

The Court agrees with the Plaintiff. This adversary proceeding has both a close nexus to the administration of the Plan and a conceivable effect on the main bankruptcy case. Additionally, the Plan adequately retains jurisdiction in bankruptcy court over these claims. Therefore, post-confirmation jurisdiction exists under either test.

**A. The Court Has Jurisdiction Under The Close Nexus Test.**

To determine the scope of postconfirmation "related to" bankruptcy jurisdiction, some courts have established a close nexus test. In re Resorts Int'l, Inc., 372 F.3d 154, 166–67 (3d Cir. 2004). Under this test, courts consider whether post-confirmation litigation will "affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan…." Id. at 167. The Eighth Circuit has recognized a version of the close nexus test that is

similar to the test used in other jurisdictions. "Generally, once a bankruptcy debtor's reorganization plan has been confirmed . . . 'the estate of the debtor, and thus the bankruptcy court's jurisdiction, ceases to exist.'" In re Fairfield Communities, Inc., 142 F.3d 1093, 1095 (8th Cir. 1998) (quoting Norwest Equip. Fin., Inc. v. Nath (In re D & P Partnership), 91 F.3d 1072, 1074 (8th Cir. 1996)). "Nevertheless, even after the confirmation of a debtor's plan, 'a bankruptcy court may explicitly retain jurisdiction [by stating so in the order confirming the plan] over aspects of a plan related to its administration and interpretation.'" Id.

Courts have held that a postconfirmation proceeding may be more likely to have a close nexus if a plan is a plan of liquidation (as opposed to a plan of reorganization), as in this case. E.g., In re Bos. Reg'l Med. Ctr., Inc., 410 F.3d 100, 105–06 (1st Cir. 2005); In re Air Cargo, Inc., 401 B.R. 178, 187–88 (Bankr. D. Md. 2008). Those courts have reasoned as follows: (1) plans of liquidation effectuate the winding down of the debtor and, therefore, do not create a risk of limitless bankruptcy jurisdiction; (2) a primary purpose of such plans is to pursue postconfirmation litigation, which means such litigation is more directly related to the plan; and (3) keeping postconfirmation litigation in the bankruptcy court furthers expeditious liquidation and prompt distribution to creditors. E.g., Bos. Reg'l Med. Ctr., 410 F.3d at 105–07. An action by a liquidating trustee who brings retained claims for the benefit of creditors will typically satisfy the close nexus test. In re Residential Cap., LLC, 527 B.R. 865, 871 (S.D.N.Y. 2014); see also McKinstry v. Sergent, 442 B.R. 567, 575 (E.D. Ky. 2011) (reasoning that a liquidating trust replaces the bankruptcy estate and represents creditors for jurisdiction purposes).

Here, the Plaintiff asserts fraudulent transfer claims that arose preconfirmation. See, e.g., Am. Compl., Dkt. No. 25 at 13–24. As discussed below, the Plan adequately retained the fraudulent transfer claims and authorized the Plaintiff, as Liquidating Trustee, to pursue them. Further, the

claims in this case are either in enforcement of judgments or closely related to lawsuits explicitly retained in the Plan. The primary purpose of the Plan is to ensure that the Trustee can recover funds, including from actions such as this, and distribute them to creditors. See Debtors' Am. Chapter 11 Plan of Liquidation, In re EPIC Companies Midwest, LLC, No. 24-30281, Dkt. No. 366 at 4 (Bankr. D.N.D. June 11, 2025). Therefore, these claims lie within the administration of the Plan and establish a close nexus between the bankruptcy process and this adversary proceeding.

The Defendants cite Fairfield in arguing that a confirmed plan's retention of jurisdiction is insufficient absent a close nexus. Defs.' Mot., Dkt. No. 26 at 14 (citing 142 F.3d at 1095–96). In Fairfield, property owners brought state law claims (which arose postconfirmation) against the debtor in state court. 142 F.3d at 1094–96. The debtor then filed an adversary proceeding in the bankruptcy court to enjoin those claims, arguing the property owners' claims had been discharged upon confirmation of the debtor's plan approximately two years prior. Id. at 1095. The court concluded there was no bankruptcy jurisdiction over the adversary proceeding because the adversary proceeding did not involve enforcement of the debtor's plan; confirmation had only discharged claims which arose preconfirmation. Id. at 1095–96. Unlike in Fairfield, the Plaintiff here is not seeking to enjoin claims that arose postconfirmation. Rather, the Plaintiff is bringing claims which arose preconfirmation and were retained by the Plan (as explained below). Therefore, Fairfield is distinguishable.

The Defendants also cite Harstad v. First American Bank (In re Harstad) to the same end. Defs.' Mot., Dkt. No. 26 at 14 (citing 39 F.3d 898 (8th Cir. 1994)); see also id. (citing In re Kip and Andrea Richards Family Farm & Ranch, LLC, 608 B.R. 219, 224–25 (Bankr. D. Neb. 2019) (same). In Harstad, the court affirmed dismissal of a postconfirmation preference suit because the confirmed plan did not retain the preference claims and any recovery would not benefit creditors.

Harstad, 39 F.3d at 902–05. The court framed these flaws as issues of standing rather than as a lack of a close nexus or conceivable effect. Id. As the Court will explain below, the Plan both retained these claims and provides that any recovery would be distributed to the creditors. Therefore, Harstad is distinguishable.

The Defendants also offer Valley Historic Ltd. v. Bank of New York as an instance in which "collection-type litigation did not affect plan implementation." Defs.' Mot., Dkt. No. 26 at 14 (citing 486 F.3d 831, 836–38 (4th Cir. 2007)). The court in Valley, however, noted that "the Debtor had paid all its creditors, including the [defendant] before instituting the adversary proceeding, and the Plan was substantially consummated." 486 F.3d at 837. Here, the creditors have not all been paid, and any recovery would benefit creditors. Therefore, Valley is distinguishable.

In addition to establishing a close nexus, courts require a second step—that a confirmed plan retain the bankruptcy court's jurisdiction over the terms of the plan. In re Diocese of Winona-Rochester, 2022 WL 1814040, at *7 (citing In re Ener1, Inc., 558 B.R. 91, 96 (Bankr. S.D.N.Y. 2016)). The Eighth Circuit has not made clear whether such retention provisions are required for postconfirmation jurisdiction. Id. Regardless, the Plan contains such a provision and, thus, would satisfy this requirement. See Debtors' Am. Plan, In re EPIC Companies Midwest, LLC, No. 24-30281, at 28.

A close nexus exists between this adversary proceeding and the bankruptcy process. Therefore, the Court has jurisdiction under this test. The Court now turns to the conceivable effect test.

**B. The Court Has Jurisdiction Under The Conceivable Effect Test.**

In addition to the close nexus test, the Eighth Circuit has used the conceivable effect test to establish postconfirmation "related to" jurisdiction. This test requires that "the outcome of that proceeding could *conceivably have any effect on the estate* being administered in the bankruptcy…." In re Farmland Indus., Inc., 567 F.3d 1010, 1019 (8th Cir. 2009) (quoting Specialty Mills, Inc. v. Citizens State Bank, 51 F.3d 770, 774 (8th Cir. 1995)); see In re Diocese of Winona-Rochester, 2022 WL 1814040, at *7 (collecting cases). A conceivable effect exists when "the outcome could alter the debtor's rights, liabilities, options, or freedom of action… and which in any way impacts upon the handling and administration of the bankruptcy estate." Id. Postconfirmation, the inquiry becomes whether the outcome would affect or benefit creditors, as the estate no longer exists. Harstad, 39 F.3d at 904; 11 U.S.C. § 1141(b). Therefore, this test is satisfied postconfirmation if three factors are met: the Plan retained the claims at issue; any potential recovery would be disbursed to creditors; and the Plan retained jurisdiction over the claims at issue. In re RFC & ResCap Liquidating Tr. Litig., 2017 WL 3129748, at *3.

Here, all three factors are met. As explained below, the Plan adequately retains the Plaintiff's fraudulent transfer claims. The Plan also expressly retains jurisdiction. See Debtors' Am. Plan, In re EPIC Companies Midwest, LLC, No. 24-30281, Dkt. No. 366 at 28. The remaining factor is established by the Plan's distribution provisions. The Plan provides that "the Liquidating Trustee shall make a final distribution [to creditors] after determining… that all assets that feasibly could be liquidated have been liquidated." Debtors' Am. Plan, In re EPIC Companies Midwest, LLC, No. 24-30281, at 20. These assets include "all Causes of Action of the Debtors…." Id. at 6. The beneficiaries of the Liquidating Trust include several classes of creditors with claims against the Debtors. See id. at 16. Creditors acknowledged in the Plan, then, receive funds potentially

recovered by the Plaintiff. Therefore, the third factor is met, and this adversary proceeding would conceivably have an effect on the administration of the bankruptcy process.

**II. The Plaintiff Has Standing To Bring These Claims.**

The Defendants argue the Plaintiff lacks standing for three reasons. First, these claims were not retained in the Plan. Defs.' Mot., Dkt. No. 26 at 10–11, 14. Second, these claims do not belong to the estate and do not involve any transfer of estate property. Id. at 15–18. Third, judicial estoppel bars the pursuit of claims that were not disclosed in the Plan and Disclosure Statement. Id. at 14. All three arguments fail.

**A. The Plan And Disclosure Statement Retained These Claims.**

A chapter 11 plan may provide for "the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose" of "any claim or interest belonging to the debtor or to the estate." 11 U.S.C.§1123(b)(3)(a)–(b). "Confirmation of a plan of reorganization by the bankruptcy court has the effect of a judgment by the district court and res judicata principles bar relitigation of any issues raised or that could have been raised in the confirmation proceedings." In re Chattanooga Wholesale Antiques, Inc., 930 F.2d 458, 463 (6th Cir. 1991). Therefore, an order confirming a chapter 11 plan "bars any claims that could have been raised in the bankruptcy proceedings or the confirmation proceedings *not expressly reserved in the plan of reorganization or the order confirming the plan of reorganization.*" In re Hooker Invs., Inc., 162 B.R. 426, 433 (Bankr. S.D.N.Y. 1993) (quoting In re Micro-Time Mgmt. Sys., Inc., 983 F.2d 1067 (Table), 1993 WL 7524, at *4 (6th Cir. 1993)) (emphasis in original).

The Defendants argue the Plan did not properly retain the claims in this adversary proceeding. Defs.' Mot., Dkt. No. 26 at 10. The Defendants contend that the reservation language in the Plan is general, catch-all language that purports to preserve any and all potential claims. Id.

at 12. The Defendants argue such language was not specific enough to retain these claims. Id. at 11.

The Plaintiff argues that the Plan properly retains the claims for pursuit by the Liquidating Trustee. Pl.'s Opp'n, Dkt. No. 27 at 19. The Plaintiff argues the language used in the Plan was specific enough to put creditors on notice that the present claims were transferred to the Liquidating Trust and could be pursued by the Liquidating Trustee. Id. at 20. Further, the Plaintiff argues the Plan's reservation language is specific as to the type or category of claims retained. Id. at 18.

The Court agrees with the Plaintiff and concludes that the claims have been properly retained in the Plan for four reasons. First, the Plan uses very broad language retaining all "Causes of Action" for pursuit by the Liquidating Trustee. Debtors' Am. Plan, In re EPIC Companies Midwest, LLC, No. 24-30281, Dkt. No. 366 at 24. "Causes of Action" includes:

> 1. Any and all causes of action under chapter 5 of the title 11 of the United States Code.
>
> 2. Any and all other actions, proceedings, causes of action, liabilities, obligations, suits, reckonings, covenants, contracts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment, rights to object to claims, variances, trespasses, damages, judgments, executions, claims, and demands whatsoever, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, or whether asserted or assertable directly or derivatively, in law, equity, or otherwise, and all rights thereunder or attendant thereto that belong to the Debtors or their bankruptcy estates.

Id. at 60. This proceeding falls within the category of "any and all other actions . . . that belong to the Debtors or their bankruptcy estates." Id.

Second, all the claims in this proceeding directly relate or are ancillary to adversary proceedings that were specifically retained in the Plan. Id. at 58–59. The Plan defines "Causes of

Action" (which are retained) to include 25 specific pending adversary proceedings and five pending state court proceedings. Id. at 5, 58–60. The following chart shows how the Defendants in this adversary proceeding are all alleged initial or subsequent transferees of entities against which the Debtors either have default judgments or pending claims in specifically retained adversary proceedings.

**Chart 1**




Third, the Disclosure Statement states the Liquidating Trustee's intent to pursue "any viable avoidance actions." Am. Disclosure Statement, In re EPIC Companies Midwest, LLC, No. 24-30281, Dkt. No. 367 at 7.

Fourth, many of the claims in this adversary proceeding seek to execute already-obtained default judgments. See Fed. R. Civ. P. 69(a); see also Chart 1. Rule 69 (incorporated by Bankruptcy Rule 7069) allows judgment creditors to enforce money judgments in accordance with state law, which, in North Dakota, can include fraudulent transfer actions. Fed. R. Civ. P. 69(a); Fed. R. Bankr. P. 7069; Jahner v. Jacob, 515 N.W.2d 183, 185 (N.D. 1994).

Section 1123(b)(3) is, "at least in part, a notice provision." Harstad v. First Am. Bank, 39 F.3d 898, 903 (8th Cir. 1994). "Creditors have the right to know of any potential causes of action that might enlarge the estate—and that could be used to increase payment to the creditors." Id.

"[T]he notice at issue in § 1123(b)(3) is not notice to potential defendants, it is notice to creditors generally that there are assets yet to be liquidated that are being preserved for prosecution by the reorganized debtor or its designee." In re Pen Holdings, Inc., 316 B.R. 495, 500–01 (Bankr. M.D. Tenn. 2004). Such notice also may have different consequences in chapter 11 liquidations (such as this case) where a chapter 7 trustee likely would pursue avoidance actions if a plan is rejected and the case is converted. In re Bridgeport Holdings, Inc., 326 B.R. 312, 327 (Bankr. D. Del. 2005).

Here, none of the Defendants apparently filed claims in any of the Debtors' bankruptcy cases. Thus, the Defendants are not the intended beneficiaries of Section 1123(b)(3). Bridgeport, 326 B.R. at 327 ("§ 1123(b)(3) was intended to benefit the creditors of a bankruptcy estate, not the potential defendants of the preserved claims."). The Defendants are allegedly fraudulent transferees of five entities against whom the Debtors had judgments or pending adversary proceedings at the time of plan confirmation; those proceedings were specifically retained. Debtors' Am. Plan, In re EPIC Companies Midwest, LLC, No. 24-30281, Dkt. No. 366 at 58–59. Therefore, creditors knew that certain claims were being pursued, and this action does not seek any greater recovery beyond that which was disclosed. "Because the fraudulent-transfer claim is ancillary and incident to the underlying debt, the creditor has no greater rights against the transferee than he has against the transferor." Jahner, 515 N.W.2d 183, 186 (N.D. 1994). "[The uniform fraudulent conveyance act] provides a method by which the frustration of claims by a conveyance may be avoided, but *it does not create new claims*." Id. (emphasis added). In other words, the Plaintiff can receive no more from the Defendants than it can from the transferors. Any amounts collected for the fraudulent transfers would reduce the amount that the Plaintiff could receive from the transferors, and vice versa.

The creditors—who are the intended beneficiaries of Section 1123(b)(3)—are not harmed if a Liquidating Trustee determines that recovering on retained claims would be aided by an action against fraudulent transferees of the original defendants and judgment debtors. Concluding otherwise would mean that the Liquidating Trustee could only recover from the original defendants, which would incentivize such defendants to make fraudulent transfers that, in effect, would no longer be voidable. It is unreasonable to require debtors to retain not only potential claims, but also every possible means a debtor might eventually need to employ to recover on those claims, including garnishment actions, fraudulent transfer actions, and other remedies. Such an outcome would harm the creditors that Section 1123(b)(3) protects and would be a windfall to the Defendants. Cf. Keathley v. Buddy Ayers Constr., Inc., 146 S. Ct. 1532, 1543–45 (2026) (Sotomayor, J., concurring) (noting similar flaw in requested application of judicial estoppel).

The Defendants cite Kelley v South Bay Bank (In re Kelley), 199 B.R. 698 (B.A.P. 9th Cir. 1996), a nonbinding decision, to argue that the Plan's retention provisions were not sufficiently specific. In Kelley, the debtor objected postconfirmation to a creditor's secured claim and asserted counterclaims. 199 B.R. at 701. The debtor argued that the following language in the confirmed plan retained the objection and counterclaims:

> Within thirty (30) days of the date of Plan Confirmation, the Debtors shall initiate adversary proceedings to contest the amount, allowability, priority and/or secured status of any claims which the Debtors believe are not proper. The Debtors may at the same time bring any counter-claims that they believe proper against any creditors asserting claims.

Id. at 704. The court concluded that "the above language is little more than a general reservation of rights, which has been held insufficient to prevent the application of res judicata." Id. The court also concluded that the disclosure statement's vague references to potential counterclaims were insufficient because the disclosure statement did not mention the grounds for those counterclaims.

Id. at 704–05. The Defendants also rely on D&K Properties Crystal Lake v. Mutual Life Ins. Co., 112 F.3d 257 (7th Cir. 1997) for similar reasons.

Here, the Plan includes much more than the general language at issue in Kelley and D&K. The Plan specifically retained 25 adversary proceedings—including the five against the alleged fraudulent transferors—and the Liquidating Trustee now asserts claims against alleged fraudulent transferees of the original defendants. The Disclosure Statement also specifically described avoidance actions, which would include claims under NUVTA. Further, Kelley involved litigation against a creditor who could vote on the plan, and the court was concerned that the debtor may have avoided disclosing the objection and counterclaims so that the creditor would not vote against the plan. Id. at 704–05. The Defendants here are not creditors who might have voted differently based on the Plan's claim retention provisions. Therefore, Kelley and D&K are distinguishable.

In summary, the Plaintiff has standing to bring these claims. The Court need not decide whether a catch-all retention provision by itself would be sufficient. The Plaintiff has standing to bring these claims because: (1) these claims fall within the Plan's catch-all retention language; (2) the Disclosure Statement stated that the Liquidating Trustee will pursue any viable avoidance actions; (3) the Plan specifically retained the five adversary proceedings against the alleged fraudulent transferors; and (4) these claims are ancillary to those claims against the fraudulent transferors and simply add ways to collect on the claims specifically retained in the Plan. See Jahner, 515 N.W.2d 183, 186 (N.D. 1994).

**B. These Claims Belonged To The Estate And Need Not Involve Transfers Of Estate Property.**

The Defendants argue the Plaintiff lacks standing because these claims do not belong to the bankruptcy estate and do not involve any transfer of estate property. Defs.' Mot., Dkt. No. 26 at 15–16, 18. The Defendants also argue these claims are "derivative" and belong to the Project

Companies. Id. at 16. Relatedly, the Defendants argue that the Plaintiff is not the real party in interest. Id. at 17–18; see Fed. R. Civ. P. 17(a). Each argument fails.

**1. These Claims Were Property Of The Estate.**

These claims were property of the estate because the Debtors possessed these causes of action as of the commencement of the case. "[I]t is clear that causes of action belonging to the *debtor* at the commencement of the case are included within the definition of property of the estate." In re Ozark Rest. Equip. Co., Inc., 816 F.2d 1222, 1225 (8th Cir. 1987) (emphasis in original); see 11 U.S.C. § 541(a). All the alleged fraudulent transfers occurred pre-petition. As will be discussed below, the Debtors have sufficiently pled that they were creditors of the alleged fraudulent transferors as of the petition date. Therefore, these causes of action were property of the estate. (Of course, the estate ceased to exist when the Plan was confirmed. 11 U.S.C. § 1141(b). However, as explained above, the Plan retained these claims to be brought by the Plaintiff.)

**2. These Claims Are Not Derivative Claims.**

The Defendants also argue these claims are "derivative claims"[1] that belong to the Project Companies, the transferors of the alleged fraudulent transfers in this adversary proceeding. Defs.' Mot., Dkt. No. 26 at 15–16, 18. The claims do not belong to the Project Companies because: (1) the Plaintiff owns these claims under North Dakota law; and (2) the Defendants are confusing non-bankruptcy law with bankruptcy law.

[1] Outside of bankruptcy, derivative claims are lawsuits arising from injury to another person or lawsuits by a beneficiary of a fiduciary to enforce a right belonging to the fiduciary. Derivative Action, Black's Law Dictionary (12th ed. 2024). A common example is an action by a corporation's shareholders to redress harm to the corporation. In bankruptcy, derivative claims are typically claims owned by the estate but brought by another party, usually the unsecured creditors' committee. See, e.g., In re Racing Servs., Inc., 540 F.3d 892, 898 (8th Cir. 2008). These claims are not derivative in either sense of the term.

**a. The Plaintiff Owns These Claims Under North Dakota Law**

Under North Dakota law, a standard fraudulent transfer claim (whether actual or constructive) is where a plaintiff is owed money by an entity and that entity makes an alleged fraudulent transfer to the potential defendants. However, North Dakota law does not allow the alleged fraudulent transferor itself to bring fraudulent transfer claims for transfers it made.

Here, the Plaintiff alleges that the Debtors are owed money by the Project Companies and that the Defendants are initial and subsequent transferees of fraudulent transfers made by the Project Companies. These are standard fraudulent transfer claims that the alleged transferors, the Project Companies, cannot bring under North Dakota law. The following chart illustrates this point.

**Chart 2**




Therefore, these claims do not belong to the Project Companies. For the same reasons, the Plaintiff is the real party in interest because the Plaintiff is not seeking redress of a harm to some other party. Cf. Fed. R. Civ. P. 17(a).

**b. The Project Companies Could Only Bring These Claims If In Bankruptcy.**

In bankruptcy, the trustee can bring claims for alleged fraudulent transfers made by the debtor as though the trustee were a creditor of the debtor under normal fraudulent transfer law. Section 544 explicitly allows the trustee to stand in the shoes of creditors and bring fraudulent transfer claims under state law for transfers of the debtor's property and Section 548 effectively

does the same by allowing the trustee to avoid certain transfers of the debtor's property. See 11 U.S.C. §§ 544(b), 548(a). Therefore, the Project Companies could only bring these claims if they filed for bankruptcy, which they have not done.

**3. No Transfer Of Property Of The Debtors Needed To Be Alleged.**

Further, the Defendants' argument that a transfer of estate property (or the Debtors' prepetition property) needed to be alleged is incorrect because these claims are not brought under 11 U.S.C. §§ 544(b)(1) or 548(a)(1). As discussed above, those statutes allow a trustee to seek avoidance of a transfer of property of the debtor. A debtor typically could not bring such an action outside of bankruptcy. Here, as discussed above, the Plaintiff is not bringing any claims under Section 544 or Section 548 and seeks to avoid transfers made by non-bankruptcy debtors against whom the Debtors have claims. These are standard fraudulent transfer claims that would be available outside of bankruptcy and need not (and cannot) involve any transfer of estate property or the Debtors' prepetition property.

**C. Judicial Estoppel Does Not Bar These Claims.**

As explained above, Section 1123(b)(3) and the doctrine of res judicata govern the post-confirmation retention of claims. Therefore, judicial estoppel does not apply in this context. However, even assuming judicial estoppel could apply, the Court would not apply it here.

"Judicial estoppel is an 'equitable doctrine' intended 'to protect the integrity of the judicial process,' both by 'prohibiting parties from deliberately changing positions according to the exigencies of the moment,' and by preventing the 'risk of inconsistent court determinations.'" Keathley v. Buddy Ayers Constr., Inc., 146 S. Ct. 1532, 1538–39 (2026) (quoting New Hampshire v. Maine, 532 U.S. 742, 749–51 (2001)). "[W]hen a court conducts an equitable inquiry, it must act 'on a case-by-case basis,' considering all relevant facts and circumstances." Id. at 1539

(quoting Holland v. Florida, 560 U.S. 631, 649–650 (2010)). The Supreme Court "has never applied judicial estoppel in the bankruptcy context." Id. at 1539.

Despite the Debtors' compliance with Section 1123(b)(3), the Defendants ask the Court to bar these claims by judicial estoppel. However, the Plaintiff has not "deliberately chang[ed] positions according to the exigencies of the moment." Keathley, 146 S. Ct. at 1538 (quoting New Hampshire, 532 U.S. at 750). Neither the Plaintiff nor the Debtors ever stated that these claims did not exist. The Plan retained these claims postconfirmation; barring the Plaintiff from bringing them would harm the creditors whom Section 1123(b)(3) protects and would be a windfall to alleged fraudulent transferees. See Keathley, 146 S. Ct. at 1543–45 (Sotomayor, J., concurring). Such a result would be inequitable. Therefore, even if judicial estoppel could apply in this context, the Court would not apply it here.

## III. Mandatory Abstention Does Not Apply.

The Defendants also claim that this Court is required to abstain from this proceeding under 28 U.S.C. § 1334(c)(2). Defs.' Mot., Dkt. No. 26 at 26–27. Section 1334(c)(2) states that:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding *if an action is commenced*, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2) (emphasis added); see also Schmidt v. Klein Bank (In re Schmidt), 453 B.R. 346, 350 (B.A.P. 8th Cir. 2011); Stoe v. Flaherty, 436 F.3d 209, 213–14 (3d Cir. 2006) (enumerating similar elements). Here, it is undisputed that the claims brought by the Plaintiff are based upon North Dakota state law, and the Court has already concluded these claims are related to a case under title 11.

The Defendants argue that their motion is timely; the Plaintiff's claims are "exclusively state-law… claims"; the claims are not core; no independent federal jurisdiction exists; and a state court can timely adjudicate these claims. Defs.' Mot., Dkt. No. 26 at 26. The Plaintiff responds that the Defendants' motion is not timely; no state action is commenced; and independent jurisdiction does in fact exist. Pl.'s Opp'n, Dkt. No. 27 at 34–36.

Mandatory abstention does not apply because no proceeding has been commenced in a state forum. The Defendants identify no action that has been commenced in state court. Therefore, mandatory abstention is inapplicable.

Mandatory abstention also may be inappropriate because the Defendants fail to show that these claims could not have been brought in federal court absent jurisdiction under Section 1334. Federal courts have independent jurisdiction to hear cases in which the opposing parties are residents of different states and the amount in controversy is over $75,000.00. 28 U.S.C. § 1332. Here, the fraudulent transfers that the Plaintiff seeks to avoid total over $75,000.00. The Amended Complaint alleges that the Defendants are all residents of North Dakota. Am. Compl., Dkt. No. 25 ¶¶ 2–13. The Plaintiff's opposition brief states that the Plaintiff is a resident of Minnesota. Pl.'s Opp'n, Dkt. No. 27 at 36. Taken as true, this would support diversity jurisdiction. See Navarro Sav. Ass'n v. Lee, 446 U.S. 458 (1980) ("[A] trustee is a real party to the controversy for purposes of diversity jurisdiction when he possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others."). Although not all these facts appear in the Amended Complaint (they could potentially be added into an amended complaint), the Defendants have not shown that there would not be diversity jurisdiction. Therefore, this action likely could have been commenced in federal court without bankruptcy jurisdiction. Regardless, mandatory abstention is inapplicable because no action has been commenced in state court.

## IV. Permissive Abstention Is Not Warranted.

Courts have examined several factors to determine whether permissive abstention is warranted in bankruptcy proceedings. See, e.g., In re Chicago, Milwaukee, St. Paul & Pacific Railroad Co., 6 F.3d 1184 (7th Cir. 1993). These factors include:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden on [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

Id. at 1189 (quoting In re Eastport Assoc., 935 F.2d 1071, 1075–76 (9th Cir. 1991)); see also Williams v. Citifinancial Mortgage Co. (In re Williams), 256 B.R. 885, 894 (B.A.P. 8th Cir. 2001). Although these factors are persuasive, "no one factor is necessarily determinative" and must be weighed against reasons to continue with federal proceedings. Id. The Court analyzes each as follows.

1. The effect or lack thereof on the efficient administration of the estate if a Court recommends abstention.

Although there is no estate postconfirmation, any recovery on these claims would be distributed to creditors under the Plan. Therefore, abstaining would delay efficient administration of the estate because the Plaintiff could have to start over in another court. This factor weighs against abstention.

2. The extent to which state law issues predominate over bankruptcy issues.

This adversary proceeding involves mostly state law issues. The Plaintiff's claims are all based on state law. Bankruptcy law only affects questions of jurisdiction, standing, abstention and the statute of limitations. This factor weighs in favor of abstention.

3. The difficult or unsettled nature of the applicable law.

Fraudulent transfer law is not a difficult or unsettled area of law in which a state court would have greater expertise than a bankruptcy court. This factor weighs against abstention.

4. The presence of a related proceeding commenced in state court or other nonbankruptcy court.

No related proceeding is pending in a state court that would make this proceeding duplicative. In fact, related proceedings—the five actions against the transferors—are all pending in federal court. This factor weighs against abstention.

5. The jurisdictional basis, if any, other than 28 U.S.C. § 1334.

As already explained, a federal district court would likely have diversity jurisdiction over this action. This factor weighs against abstention because the Plaintiff could simply refile in the District Court.

6. The degree of relatedness or remoteness of the proceeding to the main bankruptcy case.

This proceeding is related to the main bankruptcy case because this proceeding enforces the Plan by asserting preconfirmation claims, for the benefit of all creditors, related to the five actions pending in federal court. This factor weighs against abstention.

7. The substance rather than the form of an asserted 'core' proceeding.

"[P]roceedings to determine, avoid, or recover fraudulent conveyances" are a type of core proceeding listed in Section 157. 28 U.S.C. § 157(b)(2)(H). This proceeding seeks to avoid and recover fraudulent transfers for the benefit of creditors. This factor weighs against abstention.

8. The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court.

There are no core bankruptcy matters to be severed from state law claims because this proceeding consists entirely of state law claims; the bankruptcy issues in this case relate to threshold matters such as jurisdiction, standing, and the statute of limitations. This factor weighs in favor of abstention.

9. The burden on the bankruptcy court's docket.

Hearing this case would not burden the bankruptcy court's docket. This factor weighs against abstention.

10. The likelihood that the commencement of the proceeding involves forum shopping by one of the parties.

There is no allegation that this proceeding involves forum shopping. This factor weighs against abstention.

11. The existence of a right to a jury trial.

There is a right to a jury trial on these claims. This factor weighs in favor of abstention.

12. The presence in the proceeding of nondebtor parties.

The Plaintiff, as Liquidating Trustee, stands in the Debtors' shoes. All Defendants are nondebtor parties. This factor is neutral.

To summarize, eight of the twelve factors weigh against abstention, three factors weigh in favor of abstention, and one factor is neutral. Therefore, the Court will not permissively abstain because most of the factors to be considered weigh against abstention.

Even if more factors were weighed in favor of abstention, the Court has explained above why the District Court likely would have diversity jurisdiction. Therefore, even if the Court abstained, this case likely would end up back in federal court. The Defendants also have stated

they are entitled to a jury trial and do not consent to the Bankruptcy Court conducting that trial. Therefore, regardless of whether the Court abstains, any ultimate trial will be conducted by the District Court.

**V. The Plaintiff May Use Section 108 For Claims That Arose On Or After July 8, 2020.**

Section 108 provides that:

> If applicable nonbankruptcy law fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of — (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or (2) two years after the order for relief.

11 U.S.C. § 108(a). The Debtors filed their petitions on July 8, 2024, and the Plaintiff filed this adversary proceeding on December 23, 2025, within two years after the order for relief.

The Defendants argue that Section 108 applies only to causes of action belonging to the debtor or the estate but that these claims do not belong to the debtor or the estate. Defs.' Mot., Dkt. No. 26 at 24. The Defendants state that the Plaintiff proceeds under state law as a creditor of nondebtor entities, and that claims asserted in this capacity are not estate property. Id. Therefore, the Defendants argue Section 108 does not apply. Id. The Defendants further argue that a postconfirmation representative may not assert claims belonging to creditors absent a valid assignment or specific statutory authority. Id. at 25.

The Plaintiff argues these claims were property of the estate as of the petition date. Pl.'s Opp'n, Dkt. No. 27 at 32. The Plaintiff contends that these claims were later transferred to the Plaintiff under the terms of the Plan. Id. The Plaintiff also argues that Section 108 applies to liquidating trustees and other estate representatives. Id.

The Court agrees that the Plaintiff can utilize Section 108 for claims that arose on or after July 8, 2020. As explained above, these claims were all property of the estate. North Dakota law

provides the statute of limitations for these claims, which is four years. N.D. CENT. CODE § 13-02.1-09(1)–(2). The Debtors filed their petitions on July 8, 2024. Therefore, the statute of limitations would already have run for any fraudulent transfer claims that arose on July 7, 2020 or earlier. Therefore, the Plaintiff can use Section 108 for claims that arose on or after July 8, 2020. (11 U.S.C. § 108(a) allows the Plaintiff to bring these actions until the *later* of the expiration of the statute of limitations or two years after the order for relief—in this case, July 8, 2026. These claims were brought on December 23, 2025.)

The Court also agrees with the courts holding that a liquidating trustee can invoke Section 108(a). See, e.g., In re Greater Se. Cmty. Hosp. Corp., 333 B.R. 506, 534–38 (Bankr. D.D.C. 2005); Antioch Litig. Tr. v. McDermott Will & Emery LLP, 500 B.R. 755, 760–64 (S.D. Ohio 2013). Those courts reason that, although Section 108(a) only references the trustee, "[i]t makes no sense that an estate's state law claims could have been pursued by 'the trustee' by virtue of Section 108(a) until the [extended statute of limitations] but that this power disappeared into the ether when these same claims vested in a liquidating trust pursuant to 11 U.S.C. Section 1123(b)(3)(B) *as successor to the trustee* under a plan confirmed [prior to the extended statute of limitations]." Antioch Litig. Tr., 500 B.R. at 762 (quoting Greater Se. Cmty. Hosp. Corp., 333 B.R. at 536) (emphasis added). The Court finds this reasoning persuasive.

The Eighth Circuit has not addressed this issue, but the Eighth Circuit has held that chapter 5 avoidance actions are property of the estate and can be sold notwithstanding the fact that the avoidance statutes such as Sections 548 and 550 explicitly only allow the trustee to bring such actions. In re Simply Essentials, LLC, 78 F.4th 1006, 1011 (8th Cir. 2023); 11 U.S.C. §§ 548(a), 550(a). If a purchaser of claims can bring actions facially limited to the trustee because those claims are property of the estate under 11 U.S.C. § 541 which can be sold, then Section 108(a)—

which also facially only applies to trustees—can apply to a liquidating trustee because Section 1123(b)(3) allows for the transfer of claims to liquidating trustees.

**VI. The Plaintiff Adequately Pleads Fraudulent Transfer Claims.**

The Defendants further assert that the Plaintiff neither adequately pleads facts that would establish a plausible claim nor raises claims that would establish the Plaintiff's standing. Defs.' Mot., Dkt. No. 26 at 15. The Defendants raise four specific arguments to this end. First, the Defendants claim that the Amended Complaint fails to plead sufficient facts to establish the Plaintiff's standing as a creditor. Id. at 15–17. Second, the Defendants argue that the Plaintiff failed to plead sufficient facts to plausibly allege the Project Companies' insolvency. Id. at 21–22. Third, the Defendants likewise argue that the Plaintiff failed to plead sufficient facts to plausibly allege the lack of adequate consideration. Id. Fourth, the Defendants maintain that the remaining allegations within the complaint do not satisfy the heightened standard for pleading fraud with particularity. Id. at 22–23. The Court finds that the Plaintiff has adequately pled all claims, and, as a result, these four arguments fail.

A pleading that alleges fraud "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To do so, a complaint must allege the "newspaper elements," or "the who, what, when, where and how" of the fraudulent conduct. E-Shops Corp. v. U.S. Bank Nat. Ass'n, 678 F.3d 659, 666 (8th Cir. 2012); Freitas v. Wells Fargo Home Mortg., Inc., 703 F.3d 436, 439 (8th Cir. 2016). Fraudulent conduct that invokes this heightened standard includes actual and constructive fraudulent transfers. See Stoebner v. Opportunity Fin., LLC, 909 F.3d 219, 226, 226 n.6 (8th Cir. 2018) (citing Residential Funding Co. v. Bell State Bank & Trust, 637 Fed. Appx. 970, 971 (8th Cir. 2016)). These elements must be pled with such particularity that a defendant would have notice to construct a defense against the elements of fraud alleged.

Commercial Prop. Invs., Inc. v. Quality Inns Intern., Inc., 61 F.3d 639, 644 (8th Cir. 1995). To determine particularity, a court must ignore legal conclusions and "[t]hreadbare recitals" and only consider factual allegations. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

**A. The Plaintiff Pleads Sufficient Facts To Establish Its Status As A Creditor.**

As discussed above, the Plaintiff has standing to pursue the claims alleged in the Amended Complaint. The Defendants nevertheless suggest that the Plaintiff "use[s] the label of 'creditor' to appropriate claims" without pleading sufficient facts to justify that label. Defs.' Mot., Dkt. No. 26 at 17. In the Defendants' terms, the Amended Complaint attempts to "bootstrap" creditor status by relying solely on default judgments. Id. Therefore, the Defendants argue that the Plaintiff failed to allege sufficient facts to establish its standing because these default judgments alone do not validate a creditor-debtor relationship. Id.

The Plaintiff does not impermissibly rely on bare recitals or insufficient default judgments. Cf. Iqbal, 556 U.S. at 678. North Dakota fraudulent transfer law defines "creditors" expansively as "a person that has a claim." N.D. CENT. CODE § 13-02.1-01(4). A "claim" is likewise defined broadly as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." N.D. CENT. CODE § 13-02.1-01(3). The Plaintiff's factual allegations, accepted as true, establish creditor status regardless of whether the claim has been "reduced to judgment" or is "disputed" by the Defendants.

The Amended Complaint alleges detailed facts establishing the Debtors' relationship to the Project Companies. Am. Compl., Dkt. No. 25 at 5–12. The Plaintiff enumerates the face values and dates for multiple promissory notes between the Debtors and each individual Project Company. See id. Further, judgments against several Project Companies are separately alleged. Id.

That the Defendants may contest the validity of these debts and judgments has no bearing on the sufficiency of the pleadings. The statutory definitions explicitly provide for such dispute. The Plaintiff alleged facts that plausibly demonstrate their creditor status and establish the "newspaper" elements about this status. Therefore, the Amended Complaint sufficiently pleads the Plaintiff's standing as a creditor. Cf. Iqbal, 556 U.S. at 678; Freitas, 703 F.3d at 439.

**B. The Plaintiff Pleads Sufficient Facts To Establish Constructive Fraudulent Transfer Claims.**

The Plaintiff's constructive fraudulent transfer claims require showing transfers made for less than reasonably equivalent value and while one or more of three conditions indicating financial distress existed: insolvency, inadequate capital, or an inability to pay debts as they became due. See N.D. CENT. CODE § 13-02.1-04(1)(b). The Plaintiff sufficiently pleads these elements.

**1. The Plaintiff Pleads Sufficient Facts to Establish The Project Companies' Insolvency.**

The Defendants contend that the Plaintiff's allegations of insolvency are insufficient because they provide "no financial data, no balance sheet facts, and no transaction-specific allegations demonstrating insolvency at the time of any particular transfer." See Defs.' Mot., Dkt. No. 26 at 21. The Defendants argue that allegations of insolvency must rest on these specific facts, so the opinion of the Plaintiff based on a "review" of the Project Companies' financials is improper. Id.

The Plaintiff alleges throughout the Amended Complaint that the Project Companies in question "were insolvent or became insolvent shortly after each of the… Transfers were made." See, e.g., Am. Compl., Dkt. No. 25 at 26, 28. Additionally, the Plaintiff alleges several debts held by each Project Company. Id. at 5–12. The Amended Complaint does not include calculations of

assets with those liabilities. The Plaintiff, however, is not required to plead balance sheet facts in the Amended Complaint. Only "the circumstances constituting fraud," and not every alleged fact, must be stated with particularity. FED. R. CIV. P. 9(b). Insolvency is a factual allegation of individual defendants that the Court must accept as true for purposes of Rule 12(b)(6). Cf. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); In re Muncrief, 900 F.2d 1220, 1224–25 (8th Cir. 1990) (treating insolvency as a factual matter). The Defendants effectively demand that the Plaintiff satisfy the summary judgment standard at the motion to dismiss stage. Cf. FED. R. CIV. P. 56.

A court in this district has found that similar allegations were sufficient. In Security First Bank of North Dakota v. Erickson, the plaintiff alleged that the defendant "was insolvent, or as a result of the conveyances and transfers became insolvent…." No. A4-03-83, 2004 WL 434166, at *3 (D.N.D. Mar. 4, 2004). The court noted that arguments these allegations were insufficient were "not appropriate at this stage of the litigation" and so found the allegations sufficient. Therefore, the Plaintiff's allegations of insolvency meet the standards of Rule 9(b).

**2. The Plaintiff Pleads Sufficient Facts To Establish Lack Of Reasonably Equivalent Value.**

The Defendants assert that the Plaintiff insufficiently pleads a lack of reasonably equivalent value exchanged for the Project Companies' alleged transfers. Defs.' Mot., Dkt. No. 26 at 21. Allegations can be ignored for purposes of pleading sufficiency to the extent that they recite statutory elements. See Iqbal, 556 U.S. at 678. The Defendants therefore argue that there is a lack of factual specificity to support the inferences made by the Amended Complaint. Defs.' Mot., Dkt. No. 26 at 21.

The Plaintiff, however, alleges facts about inadequate consideration that extend beyond mere recitals. The Amended Complaint alleges that "no goods or services" were provided for any

of the transfers alleged. See Am. Compl., Dkt. No. 25 at 26–49. These allegations contain factual content rather than legal conclusions even if the allegation is a negative averment. The Plaintiff essentially claims the absence of any reciprocal transfer in return for the alleged transfers by the Project Companies. The Court again must accept these allegations as true for a motion to dismiss. Twombly, 550 U.S. at 555.

The absence of goods or services plausibly establishes a lack of reasonably equivalent value exchanged for each individual transfer. Further, the Plaintiff alleged this absence with particularity by attaching the allegations to individual defendants and their alleged transfers. Therefore, the Plaintiff sufficiently alleges lack of adequate consideration.

### C. The Plaintiff Pleads Sufficient Facts To Establish Actual Fraudulent Transfer Claims.

The Defendants assert that the Plaintiff failed to identify specific actors, transactions, or facts supporting actual fraud. Id. at 22–23. The Defendants claim these specific facts are necessary to establish the newspaper elements. And, as a result, the Amended Complaint fails to meet the standard of Rule 9(b). Id.

Courts have applied the newspaper elements by requiring allegations of time periods, locations, and methods of specific acts committed by individual defendants. See Streambend Props. II, LLC v. Ivy Tower Minneapolis, LLC, 781 F.3d 1003, 1012–13 (8th Cir. 2015). However, one court reasoned that a plaintiff cannot be defeated on the grounds that the defendant would have more information about their own fraudulent conduct. Harbor Grand Holding Co. v. Adivo Constr. Corp., Case No. 4:23-cv-00768-LPR, 2025 WL 904680, at *10 (E.D. Ark. 2025). The newspaper elements were satisfied in that case because the plaintiffs alleged that a particular individual transferred funds from a company account into an account for personal benefit. Id. The court in Erickson likewise denied a Rule 12(b)(6) motion to dismiss where "[t]he complaint specifie[d] the

dates on which the alleged transfers were made." 2004 WL 434166, at *3. Finally, a district court found that a plaintiff adequately pled fraudulent transfer claims "[b]y 'specifying the dates and nature of the transactions' in question, as well as pleading several indicia of fraud…." United States v. Bame, 778 F. Supp. 2d 988, 992 (D. Minn. 2011).

The Amended Complaint here similarly enumerates each alleged transfer from specified Project Companies to individual Defendants. Am. Compl., Dkt. No. 25 at 13–24. The listed transfers are individually dated, contain specified amounts, and are allegedly entered into the "books and records" of either Debtors or the Project Companies. Id. Further, at least five badges of fraud are pled, implicitly or explicitly: insider defendants; concealment of assets; less than reasonable consideration; transfer near or during insolvency; and transfer shortly before or after debt was incurred. Compare id., with N.D. CENT. CODE §§ 13-02.1-04(a), (g)–(j). The Amended Complaint even identified statements from "Epic Companies' own internal accountant" and "Mr. Berning" that allude to disreputable conduct. Am. Compl., Dkt. No. 25 at 14–15.

The standard for pleading fraud does not require a "strong inference of fraudulent intent" as Defendants imply. The Plaintiff does not need to show a "strong inference" of fraud beyond establishing a "plausible claim" containing the newspaper elements. Iqbal, 556 U.S. at 679; Freitas, 703 F.3d at 439. The Plaintiff sufficiently pleads the newspaper elements by enumerating the specific alleged transferors and transferees, the value of each alleged transfer, the periods in which the alleged transfers took place, the mode of the alleged transfers, and several badges of fraud.

**VII. The Application Of In Pari Delicto Would Be Premature.**

In North Dakota, the in pari delicto defense means that "[b]etween those who are equally in the right or equally in the wrong the law does not interpose." N.D. CENT. CODE § 31-11-05(15); Beavers v. Walters, 537 N.W.2d 647, 652–53 (N.D. 1995) (Vande Walle, J., concurring). This defense is fact-intensive and generally inappropriate for resolution at the motion to dismiss stage. In re Petters Co., Inc., 565 B.R. 154, 165 (Bankr. D. Minn. 2017); Stephenson v. Deutsche Bank AG, 282 F. Supp. 2d 1032, 1066 (D. Minn. 2003).

Applying in pari delicto at this stage in the case would be premature. The Defendants argue that the Debtors (in whose shoes the Plaintiff stands) and the alleged fraudulent transferors were subject to the same management and control structure. Defs.' Mot., Dkt. No. 26 at 20. Therefore, the Defendants argue that any fraud by the Project Companies is necessarily attributed to the Debtors as well. Id. However, generalized allegations such as these are insufficient to show that the parties are equally in the wrong such that the law should not interpose. See N.D. CENT. CODE § 31-11-05(15). The Defendants may raise this defense later if appropriate.

**VIII. Withdrawal Of The Reference Requires A Motion Heard By The District Court.**

Proceedings referred to the Bankruptcy Court by the District Court may be withdrawn "for cause shown." 28 U.S.C. § 157(d). In addition, "[t]he district court shall . . . so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." Id. The District Court may withdraw the reference "on its own motion or on timely motion of any party." Id. "A motion to withdraw a case or proceeding under 28 U.S.C. § 157(d) must be heard by a district judge." Fed. R. Bankr. P. 5011(a).

Here, the Defendants address withdrawal of the reference in their motion to dismiss but have not brought a motion to withdraw the reference. Defs.' Mot., Dkt. No. 26 at 28–29; see Pl.'s Opp'n, Dkt. No. 27 at 38. This is procedurally improper. If the Defendants seek withdrawal of the reference, they must file a motion to be heard by a district judge. § 157(d); Fed. R. Bankr. P. 5011(a). Therefore, the Court need not—and cannot—decide this issue.

## IX. No Leave To Amend Is Required Because The Motion Is Denied.

Lastly, the Defendants argue leave to amend should not be granted. However, the Court is denying the motion to dismiss. Therefore, this point is moot.

## CONCLUSION

Each of the Defendants' arguments for dismissal fails for the reasons stated above. The Court has jurisdiction over these claims and the Plaintiff has standing to bring them. Abstention is not warranted and the Plaintiff may invoke Section 108(a). The Plaintiff adequately pleads all claims, in pari delicto is premature, and withdrawal of the reference is not before the Court. Therefore,

**IT IS HEREBY ORDERED**:

The Defendants' Motion to Dismiss Plaintiff's Amended Complaint With Prejudice (Dkt. No. 26) is denied.

**BY THE COURT:**

Dated:

s/ William J. Fisher

William J. Fisher
United States Bankruptcy Judge
Sitting By Designation